# Illinois Official Reports

## Appellate Court

---

### *People v. Gallano*, 2019 IL App (1st) 160570

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY GALLANO, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-16-0570 |
| Filed | December 13, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CR-5763; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Daniel T. Mallon, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Sara McGann, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Timothy Gallano, appeals from the order of the circuit court dismissing, on the State's motion, his petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)). On appeal, defendant does not argue that his petition has substantive merit. Instead, he argues that postconviction counsel failed to comply with the requirements of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) by failing to amend his petition to include notarized affidavits from two potential witnesses. We affirm.

## I. JURISDICTION

¶ 3    In April 2009, defendant filed a postconviction petition. The State filed a motion to dismiss the petition in September 2015. The circuit court granted the State's motion and dismissed the petition on February 26, 2016. Defendant filed his notice of appeal that same day. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017) governing appeals from a final judgment in a postconviction proceeding.

## II. BACKGROUND

¶ 5    Following a jury trial, defendant was found guilty of the 1999 first degree murder of Stacy Bravo and concealment of her homicidal death and sentenced to concurrent prison terms of 60 years and 5 years, respectively. We reversed and remanded for a new trial based on an error that occurred during jury deliberations. *People v. Gallano*, 354 Ill. App. 3d 941 (2004). On remand, a second jury found defendant guilty of the same offenses, and he was given the same sentences. We affirmed the convictions. *People v. Gallano*, No. 1-06-1189 (2007) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed an unsuccessful *pro se* petition to vacate the conviction pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)), and we affirmed on appeal, allowing appellate counsel leave to withdraw.[1] *People v. Gallano*, No. 1-10-3370 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)). In April 2009, defendant filed the *pro se* petition for postconviction relief at issue here.

¶ 6    The evidence underlying defendant's convictions is adequately set forth in our order affirming defendant's convictions after remand (*Gallano*, No. 1-06-1189), and we set forth only the evidence and procedural history necessary for an understanding of this appeal.

¶ 7    The evidence presented at the first and second trials was substantially similar. The State presented evidence that Bravo disappeared in 1999. Defendant was Bravo's boyfriend and told her family that Bravo went to a party with a girlfriend and never returned. At the time, defendant was living in Jack Moretti's house. In 2002, Moretti gave a police detective permission to search his home. On the basement floor, police found human blood that matched the DNA of Bravo's parents. Police took defendant into custody and accompanied him to

---

[1]The circuit court originally denied defendant's petition to vacate conviction *sua sponte* less than 30 days after it was filed. We vacated the judgment and remanded for further proceedings because the denial violated the procedural limitation announced in *People v. Laugharn*, 233 Ill. 2d 318, 323 (2009). *People v. Gallano*, No. 1-08-2819 (2010) (unpublished summary order under Illinois Supreme Court Rule 23(c)). On remand, the circuit court again denied the petition.

Arlene Bonta's farm, where they recovered a 55-gallon plastic drum Bonta had been storing since 1999 at defendant's request. Bravo's body was in the drum, covered with concrete and motorcycle parts. Bravo had been shot in the head five times and had a contact shot to the back of her head. From inside Bravo's skull, a pathologist recovered two pieces of lead and five pieces of jacketing, all from the same firearm.

¶ 8    Following defendant's arrest, he told Doug Hoglund, deputy chief of the Blue Island Police Department, that he and Bravo were living at Moretti's home in September 1999. One morning, Bravo argued with defendant and pointed a gun at him. Defendant took the gun away and shot Bravo in the head more than once. Moretti came out of the bedroom where he had been sleeping, and he and defendant placed Bravo's body in the trunk of her car. They later put Bravo's body in a 55-gallon drum, covering it with cement and motorcycle parts, and defendant took the barrel to Bonta's farm.

¶ 9    In a videotaped interview, defendant told Assistant State's Attorney Terrence Reilly that Bravo yelled and pointed a gun at him, he tried to take the gun, and it went off. The next thing he remembered was Moretti tapping him on the shoulder. Reilly was also present for Moretti's videotaped statement, in which Moretti stated the gun used in the shooting was his. Moretti invoked his fifth amendment right against self-incrimination and did not testify at trial.

¶ 10    Defendant testified that he had a relationship with Bravo, who he met through Moretti. Bravo sold drugs for Moretti and owed him money. On the night Bravo died, defendant and Bravo were in Moretti's basement. Bravo became upset, approached defendant, and pointed a gun at him. He reached up, grabbed her hand, and pushed her away into some chairs. The gun "went off." Defendant did not know how many times the gun went off and never put his hand on the trigger. Moretti, who was sleeping in an adjacent bedroom, came into the room. He later helped defendant hide Bravo's body in a barrel, cover it with concrete, and take it to Bonta's farm.

¶ 11    In defendant's initial appeal, we reversed his convictions for first degree murder and concealment of a homicidal death and remanded for a new trial based on an error during jury deliberations. *Gallano*, 354 Ill. App. 3d 941. Although not relevant to the basis for the remand, we addressed defendant's argument regarding the trial court's exclusion of the testimony of Alonzo Pratt, as it would likely arise on retrial. *Id.* at 955. Defendant argued that the trial court erred when it allowed Pratt, a potential defense witness, to invoke his fifth amendment right against self-incrimination. *Id.* Defendant sought to introduce Pratt's testimony or, in the alternative, an affidavit, in which Pratt discussed statements Moretti made to Pratt while they were in jail together. In the affidavit, which we quoted in full, Pratt averred that Moretti told him that he convinced "a girl" to pull a gun on a "homeless wimp-type guy." (Internal quotation marks omitted.) *Id.* at 956. Moretti told Pratt the girl did as he instructed and was then shot and killed in his apartment. Moretti helped hide her body. Moretti also said that he lied to the police, "put a case on" the "guy" in order to get help with his own case, and expected immunity in exchange for his testimony against the "guy." (Internal quotation marks omitted.) *Id.*

¶ 12    We held that it was not an abuse of discretion for the trial court to exclude Pratt's testimony regarding the statements made to him by Moretti. We did not address the issue of whether Pratt would properly invoke this fifth amendment right, finding instead that Pratt's potential testimony would have been inadmissible hearsay at trial and would not have fallen within a recognized exception. *Id.* We noted, *inter alia*, the statement did not corroborate defendant's

self-defense theory as Moretti did not indicate he was present when the gun discharged and defendant himself had testified Moretti came into the room after Bravo was shot. *Id.* at 957.

¶ 13    In his second appeal, following his convictions on remand, defendant argued in relevant part that the trial court abused its discretion when it allowed Moretti to invoke his fifth amendment privilege to avoid testifying. *Gallano*, No. 1-06-1189, slip order at 14. We held that the trial court did not abuse its discretion in allowing Moretti not to testify because Moretti had a reasonable fear of self-incrimination. *Id.* at 15. We pointed out that Moretti had been advised by counsel not to testify and, at the first trial, defendant had presented the theory that Moretti had a motive to commit the murder, as Moretti was in the basement when the murder occurred, Bravo owed Moretti drug money, and Moretti's gun was the murder weapon. *Id.*

¶ 14    We noted that Moretti had given conflicting statements about his possible involvement in the shooting, and it was thus unclear to which version of events he would testify at trial. *Id.* at 15-16. In a December 21, 2005, affidavit, Moretti had stated he was sleeping in the basement and awakened by "two pops." *Id.* at 16. When he walked into the adjacent room, he saw defendant standing "with his gun in his hand" and Bravo sprawled over a chair. *Id.* Defendant told Moretti that Bravo had attacked him. *Id.* We found this affidavit was inconsistent with not only the videotaped statement Moretti gave to police but also with the account he gave to Pratt as recounted in Pratt's affidavit. We concluded that, in light of the inconsistent statements, "Moretti had reasonable cause to apprehend further danger to himself from his answers to questions from the defense and cross-examination by the State at trial." *Id.* at 17.

¶ 15    In April 2009, defendant filed the *pro se* petition for postconviction relief now at issue, supported by more than 20 affidavits and over 100 pages of exhibits.[2] The petition is approximately 45 pages in length and contains 28 numbered contentions of error, many with multiple subparts. Pursuant to the arguments set forth in defendant's briefs on appeal, only contentions XI and XII are relevant here.

¶ 16    Contention XI is that defendant did not receive a fair trial "due to excluded evidence of a third party's guilt." In support, defendant argued that the trial court should have admitted the testimony of Pratt regarding what Moretti told him about the shooting, contending that the testimony falls under an exception to the hearsay rule and corroborates defendant's self-defense claim. Defendant referred to Pratt's undated, unnotarized affidavit, in which Pratt averred that, while he and Moretti were in jail together, Moretti told him "one night, while he and this girl were arguing over money in his apartment, he convinced her to pull a gun on the homeless wimp-type guy to scare him. Jack Moretti told me that this girl did as he instructed her to do, and she was then shot and killed in his apartment that night."[3] Pratt averred that Moretti told him he lied to the police about what happened that night, "put a case on" the homeless wimp-type guy to help himself in his own pending fraud and drug cases, would continue to lie to help himself, and expected to get immunity in exchange for his testimony against the "guy." Defendant argued that, although "excluded as hearsay in the first trial," Pratt's statement should have been admitted as a statement against penal interest as it showed

___

[2]The record contains two *pro se* postconviction petitions, one filed stamped April 14, 2009, and the other April 22, 2009. They appear to be identical otherwise.

[3]Given its content, the Pratt affidavit appears to be the same affidavit discussed in our decision on defendant's first appeal. See *Gallano*, 354 Ill. App. 3d at 955-56 (setting forth content of the Pratt affidavit).

Moretti caused the events. He also claimed the statement corroborated his self-defense claim as it showed Bravo threatened him with a gun.

¶ 17     Contention XII asserts defendant was denied his right to a fair trial "when the State intimidated a crucial defense witness to keep him from testifying." In support, defendant referred to an unnotarized affidavit by Moretti dated December 23, 2005.[4] Defendant argued that Moretti appeared on the day of trial prepared to testify that, as set forth in his affidavit, he was awakened by "two pops," went into the next room where he saw defendant holding a gun and Bravo sprawled over a chair, and believed defendant when he said "she attacked me," thus supporting defendant's self-defense version of events. Defendant claimed that, to keep the jury from hearing this testimony, the State intentionally persuaded Moretti not to testify by informing the trial court that the State could charge him with murder and telling Moretti, outside the courtroom, that the defense was trying to "jam" him up with the case. In his affidavit, Moretti claimed that, when he appeared in court on December 21, 2005, pursuant to a subpoena, an assistant state's attorney approached him to interview him regarding his testimony. Moretti told him that he was not going to speak with him "after what you guys did to me last time." Moretti averred that the attorney then told him, " '[defendant's] attorneys are going to try to jam you up with this murder, because there is no statute of limitations on murder,' in an apparent attempt to get me to talk to him." When Moretti reiterated his position, the conversation ended.

¶ 18     The circuit court docketed the petition and, in June 2009, appointed the public defender to represent defendant. The matter was continued repeatedly. On March 13, 2015, the public defender filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). In the certificate, counsel stated that she had consulted with defendant to ascertain his contentions of deprivations of constitutional rights, examined the record of trial and sentencing proceedings, and had not amended defendant's *pro se* postconviction petition, as it "adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

¶ 19     On September 18, 2015, the State filed a motion to dismiss defendant's postconviction petition. The State raised numerous objections to defendant's claims, including, as relevant here, contentions XI and XII were *res judicata* as they had been addressed in our prior decisions, Moretti's affidavit did not show that the State intimidated him, and the circuit court could not consider Moretti's affidavit in support of defendant's claims because the affidavit had not been notarized. Postconviction counsel filed a response to the State's motion to dismiss but did not directly address the lack of notarization. During oral argument on the motion, the State began to discuss Moretti's affidavit, and the court interjected, "it's not notarized." The circuit court granted the State's motion and dismissed the petition. Defendant appealed.

---

[4]The Moretti affidavit appears to be different than his affidavit discussed in our decision on defendant's second appeal. See *Gallano*, No. 1-06-1189, slip order at 15-16 (setting forth content of the Moretti affidavit). Although his averments regarding the shooting appear to be the same, the dates of the affidavits are different, and our prior decision does not reference any averments regarding the State telling him it could charge him with murder and that defense counsel was trying to "jam" him up with the case.

III. ANALYSIS

Defendant contends that he was denied the reasonable assistance of appointed postconviction counsel and his petition should be remanded for further second-stage proceedings with the assistance of new postconviction counsel. Specifically, he contends that counsel failed to adequately represent him under Rule 651(c) because she did not amend his petition to include notarized affidavits from Pratt and Moretti.

The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008)) provides a mechanism by which those under criminal sentence can assert their convictions were the result of a substantial denial of their rights under the United States Constitution and/or the Illinois Constitution. *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). A postconviction proceeding contains three distinct stages. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). At the first stage, the circuit court may dismiss a petition if it determines, within 90 days, that the petition is frivolous or patently without merit. *Id.* If not dismissed at the first stage, the petition advances to the second stage. *Id.* Here, the circuit court dismissed defendant's petition at the second stage.

At the second stage, counsel may be appointed for the petitioner. *Id.* Appointed postconviction counsel may amend the petition as necessary, and the State is allowed to file a motion to dismiss or an answer to the petition. *Id.* at 10-11. To survive dismissal at the second stage, a petition and any accompanying documentation must make a substantial showing of a constitutional violation. *People v. Bailey*, 2017 IL 121450, ¶ 18. The defendant's claims must be liberally construed in light of the trial record, and all factual allegations not positively rebutted by the record are accepted as true. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). We review *de novo* the second stage dismissal of a postconviction petition. *Id.*

Defendant challenges the assistance he received from his appointed postconviction counsel. The right to assistance of counsel during postconviction proceedings is not a matter of constitutional right but rather a matter of " 'legislative grace.' " *People v. Bell*, 2014 IL App (3d) 120637, ¶ 10 (quoting *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003)). A petitioner is not entitled to the effective assistance of counsel constitutionally required at trial or on direct appeal. *Id.* Instead, the Post-Conviction Hearing Act requires only that counsel provide a " 'reasonable level of assistance.' " *Id.* (quoting *People v. Suarez*, 224 Ill. 2d 37, 42 (2007)). Counsel must provide reasonable assistance during all stages of postconviction proceedings. See *People v. Johnson*, 2018 IL 122227, ¶ 18.

The parameters of a "reasonable level of assistance" are set by Illinois Supreme Court Rule 651(c) (eff. Feb. 6 2013), which imposes three duties on appointed postconviction counsel in order to ensure that counsel shapes the defendant's claims into a proper legal form and presents them to the court. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Under the rule, either the record or a certificate filed by counsel must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petitions "necessary for an adequate presentation" of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013); *Profit*, 2012 IL App (1st) 101307, ¶ 18. Encompassed in the third duty is the duty to remedy procedural defects in a petition, which includes a requirement to remedy an invalid affidavit. *People v. Turner*, 2012 IL App (2d) 100819, ¶ 41. Substantial compliance with Rule 651(c) is sufficient. *Profit*, 2012 IL App (1st) 101307, ¶ 18.

The filing of a Rule 651(c) certificate by postconviction counsel averring that counsel has complied with the three requirements of Rule 651(c) creates a presumption of compliance with

the rule. *Bell*, 2014 IL App (3d) 120637, ¶ 10. Where postconviction counsel files a Rule 651(c) certificate creating a presumption of compliance, it is the defendant's burden to overcome the presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by the rule. *Profit*, 2012 IL App (1st) 101307, ¶ 19. We review *de novo* compliance with a supreme court rule. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 27     Here, postconviction counsel filed a Rule 651(c) certificate certifying that she consulted with defendant to determine his constitutional claims, reviewed the record of the trial and sentencing proceedings, and found no need to amend defendant's *pro se* petition as it adequately set forth defendant's claims of deprivation of his constitutional rights, thus creating a rebuttable presumption of compliance with Rule 651(c). See *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 28     Defendant contends that he rebutted that presumption by showing that counsel failed to make two necessary amendments to the petition in violation of the third duty under Rule 651(c). Specifically, defendant claims that postconviction counsel had a duty to amend the petition by having the unnotarized affidavits of Moretti and Pratt properly executed.

¶ 29     Defendant does not argue that his claims based on the affidavits have substantive merit. Instead, citing *Suarez*, 224 Ill. 2d at 47, he argues that remand is necessary regardless of whether his claims have merit because counsel failed to comply with Rule 651(c). In *Suarez*, the supreme court found that postconviction counsel failed to comply with Rule 651(c) where he did not file a Rule 651(c) certificate and the record did not show that he consulted with defendant as required by the rule. *Id.* at 42, 44. In this context, *Suarez* held that remand is required where counsel failed to fulfill the Rule 651(c) duties "regardless of whether the claims raised in the petition had merit" and that noncompliance with the rule cannot be excused on the basis of harmless error. *Id.* at 47, 52.

¶ 30     Unlike in *Suarez*, postconviction counsel here did file a valid Rule 651(c) certificate, thus creating a rebuttable presumption that she complied with the requirements of the rule. *Profit*, 2012 IL App (1st) 101307, ¶ 23. As our supreme court explained in *People v. Greer*, 212 Ill. 2d 192, 205 (2004), the third duty under Rule 651(c) does not require postconviction counsel to amend a petition to advance frivolous or spurious claims on a defendant's behalf. "If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id.* Thus, where, as here, the presumption of reasonable assistance is present, "the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition." *Profit*, 2012 IL App (1st) 101307, ¶ 23. Accordingly, we must determine whether the *pro se* allegations in defendant's petition that were supported by Pratt and Moretti's unnotarized affidavits amounted to meritorious claims. For the following reasons, we find that neither claim has merit.

¶ 31     Defendant contends that he attached Pratt's affidavit in support of his allegation that he was denied a fair trial due to the exclusion of Pratt's testimony and/or Pratt's affidavit, specifically citing to his contention XI. Contention XI alleges Pratt's statement/testimony regarding what Moretti told him about the shooting corroborates defendant's self-defense claim and was admissible as an exception to the hearsay rule as a declaration against penal interest. We specifically rejected this contention in our decision on defendant's first appeal, holding that Moretti's statement to Pratt did not support defendant's self-defense claim and was not against Moretti's penal interest. *Gallano*, 354 Ill. App. 3d at 957-58. We concluded:

"Based on the totality of the circumstances, it was not an abuse of discretion for the trial court to exclude Pratt from testifying regarding the statements made to him by Moretti." *Id.* at 958. "The doctrine of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal." *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Accordingly, defendant's contention regarding the exclusion of Pratt's testimony is barred by *res judicata*. We find that counsel did not provide unreasonable assistance when she did not support this meritless claim with a notarized affidavit from Pratt.

¶ 32 Counsel also did not provide unreasonable assistance when she failed to amend the petition with a notarized affidavit from Moretti. Citing his contention XII, defendant contends that he attached Moretti's affidavit in support of his allegation that he was denied his right to a fair trial when the State intimidated Moretti to keep him from testifying. Contention XII alleges that an "accusation and threat" by the State to charge Moretti with murder "was calculated to transform Moretti from a willing witness to one who would refuse to testify." In support, defendant alleged that an assistant state's attorney told the trial judge in Moretti's presence that, if Moretti testified, the State would charge him with murder and told Moretti outside court that defendant's attorneys "are going to try to jam you up with this murder, because there is no statute of limitations on murder."

¶ 33 The intimidation allegation is not, as the State contends, barred by *res judicata*, as intimidation was not argued in defendant's second appeal. It is, however, forfeited. The doctrine of forfeiture bars claims that, although not raised, could have been raised earlier. *Id.* at 443-44. Moretti's December 21, 2005, affidavit relied on in our decision in the second appeal is dated only two days before the December 23, 2005, unnotarized affidavit defendant attached to his postconviction petition. See *Gallano*, No. 1-06-1189, slip order at 15-16 (setting forth the date and content of Moretti's affidavit). Thus, defendant could have raised the intimidation claim based on the new affidavit in his second appeal and has forfeited the issue.

¶ 34 Further, when we examine the merits of the intimidation allegation, we find, as the circuit court did, that the record demonstrates it has no basis in law or fact. The court had appointed an attorney to consult with Moretti regarding his fifth amendment right when it became clear Moretti might be charged with murder. Moretti decided he would not testify only after consulting with his attorney, and defendant points to nothing in the record demonstrating Moretti was in fact intimidated by the State. Nor does Moretti's affidavit support the allegation. Moretti averred that, when he appeared at court pursuant to a subpoena, he refused to be interviewed by an assistant state's attorney regarding his testimony. The attorney then, "in an apparent attempt to get me to talk to him," told Moretti that defendant's attorneys were going "jam" him up with the murder. Moretti averred that he "reiterated" his position and the conversation ended. Nowhere in his affidavit does Moretti state that he was intimidated by this effort or that he exercised his fifth amendment right against self-incrimination as a result of the State's conduct. Thus, even if Moretti's affidavit was properly notarized, it would not have supported defendant's intimidation allegation. Accordingly, the allegation was without merit, and counsel did not provide unreasonable assistance when she did not amend this meritless allegation with a notarized affidavit from Moretti.

¶ 35                                IV. CONCLUSION
¶ 36 For the foregoing reasons, we conclude that defendant has not rebutted the presumption created by the filing of a Rule 651(c) certificate that postconviction counsel provided

reasonable assistance. We affirm the judgment of the circuit court of Cook County dismissing defendant's postconviction petition.

¶ 37       Affirmed.