2021 IL App (1st) 191218-U

THIRD DIVISION
June 30, 2021

No. 1-19-1218

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17 CR 11813 |
| | ) | |
| ASA SMITH, | ) | |
| | ) | Honorable Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held*: The evidence at trial was sufficient to prove that defendant committed criminal sexual assault because the evidence supported a finding that an act of sexual penetration occurred. The evidence was likewise sufficient to support defendant's convictions for aggravated criminal sexual abuse and attempted aggravated criminal sexual assault. The trial court did not commit reversible error when it sentenced defendant.

¶ 2    Defendant Asa Smith was tried in a bench trial and found guilty of aggravated criminal sexual assault, aggravated criminal sexual abuse, and attempted aggravated criminal sexual assault. He was sentenced to an aggregate of 12 years in prison. He now appeals arguing that the State failed to prove him guilty of the charged offenses. We find that sufficient evidence was

produced at trial to prove defendant's guilt for all three offenses. Defendant also argues that the trial court erred in the factors it considered when fashioning defendant's sentence, and that the sentence imposed in this case is excessive. Finding no reversible error, we affirm.

¶ 3                                BACKGROUND

¶ 4     Defendant Asa Smith was charged with several crimes following a report from his mother-in-law, S.G., that defendant sexually assaulted her. The parties agree that defendant came to S.G.'s home on the morning of July 11, 2017 to perform plumbing work. From the point that defendant arrived at the house, the parties' accounts of what transpired are in conflict.

¶ 5     S.G. testified that, after she let defendant inside the home, defendant grabbed her from behind in a bear hug. S.G. fell backward onto a couch as she wrestled to get loose from defendant's grip and defendant landed on the couch on top of her. S.G. struggled and screamed for defendant to let her go. S.G. testified that defendant held her down with one of his forearms against her chest and he used his other hand to "snatch" off her underwear. Defendant then tried to "get down to [her] vagina," and she kept her legs closed because she "realiz[ed] what he [was] trying to do." The prosecutor asked S.G., "Did his hand actually make contact with your vagina?" S.G. responded, "yes." The prosecutor asked, "what part of his hand made contact?" S.G. responded "His hand. His whole hand. His fingers. His hand." S.G. testified that defendant then pulled down her gown, ripping it, and he licked her breasts.

¶ 6     S.G. testified that she bit defendant's hand which allowed her to get free from his grasp and move to another area of the room. Defendant followed her, groping her on her body: her thighs, her butt. She sat on another couch that was in the room. While she was sitting on the other couch, defendant stood in front of her, took out his penis, and told her to suck his penis.

She refused. She then asked defendant to get her a glass of water, and when he went to the kitchen to get water for her, she was able to run outside of the house.

¶ 7     After a few minutes, defendant came outside. S.G. testified that she was crying, and defendant was questioning why she had run out of the house. She told defendant that she was going to call the police. Defendant got into his vehicle and left, and S.G. called the police.

¶ 8     Defendant testified that he did have a sexually-related encounter with his mother-in-law that morning. However, defendant testified that it was consensual and that the two of them had engaged in approximately 10 sexual encounters previously. Defendant had been married to his wife, S.G.'s daughter, for 20 years, and he claims that he began having sexual encounters with his mother-in-law 10 years into his marriage.

¶ 9     Defendant stated that, on the morning in question, he arrived at S.G.'s home and, when he entered, she bent over in front of him. Defendant began to rub her butt, like he had done in the past, and he started kissing her neck. S.G. pulled out her breast and laid on the couch. Defendant touched and sucked on her breast and assisted her in removing her underwear. Defendant testified that S.G. opened her legs and placed defendant's hand on her vagina. Defendant claims that S.G. wanted him to engage in intercourse, but he refused. He testified that he told S.G. that they needed to stop engaging sexually and that he was going to tell his wife, S.G.'s daughter, about what they were doing. Defendant claims that S.G. threatened that, if he told his wife, S.G. was going to call the police. Defendant then left S.G.'s residence.

¶ 10     After speaking to police, S.G. was taken to the hospital for examination. S.G. told the nurse, Catherine Simonek, that someone had assaulted her. S.G. told Simonek that the person put his mouth on her nipple and fondled her with his finger. Simonek administered a sexual assault kit that included taking a swab of her nipple and a vaginal swab. A doctor performed a vaginal

exam. Defendant's DNA profile matched the DNA found on the swab taken from S.G.'s nipple, and the DNA from the vaginal swab matched the Y-STR haplotype of defendant.

¶ 11    The trial court found defendant guilty of aggravated criminal sexual assault, attempted aggravated criminal sexual assault, and aggravated criminal sexual abuse. The trial court later denied defendant's motion to reconsider and defendant's motion for a new trial. The trial court sentenced defendant to a total of 12 years in prison. Defendant now appeals his convictions and his sentence.

¶ 12                                    ANALYSIS

¶ 13    Defendant argues that his conviction for aggravated criminal sexual assault should be reversed because the evidence at trial did not prove he committed that offense. Under the Criminal Code of 2012 (720 ILCS 5/1-1 *et seq.* (West 2018)), a person commits criminal sexual assault if the person commits an act of sexual penetration by using force or the threat of force. 720 ILCS 5/11-1.20(a)(1) (West 2018). The charge can be elevated to aggravated criminal sexual assault when the victim is 60 years of age or older. See 720 ILCS 5/11-1.30(a)(5) (West 2018).

¶ 14    The question presented by defendant's challenge to his conviction for aggravated criminal sexual assault is whether the evidence introduced at trial was sufficient to prove that defendant committed an act of "sexual penetration." The Code defines "sexual penetration" as "any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including, but not limited to, cunnilingus, fellatio, or anal penetration." 720 ILCS 5/11-0.1 (West 2018).

¶ 15    Our supreme court has examined the Code's definition of "sexual penetration" and explained that there are two categories of conduct that meet the statutory definition of sexual penetration. The first part of the definition, which the supreme court refers to as the "contact clause," includes "any *contact* between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person." *People v. Maggette*, 195 Ill. 2d 336, 347 (2001) (emphasis in original). The second part of the definition, which the supreme court refers to as the "intrusion clause," includes "any *intrusion* of any part of the body of one person or of any animal or object into the sex organ or anus of another person." *Id.* (Emphasis in original). The State argues that the evidence in this case was sufficient to show that defendant committed an act of sexual penetration by intrusion.

¶ 16    S.G.'s specific testimony was that defendant's hand "made contact with" her vagina. When asked what part of defendant's hand, S.G. elaborated that "His hand. His whole hand. His fingers" made contact with her vagina. In his testimony, defendant stated that he put his hand "on" S.G.'s vagina. Defendant maintains that this testimony did not prove that he committed an act of sexual penetration. He instead contends that the evidence only demonstrated that he touched the outside of S.G.'s vagina and, therefore, the State did not prove a sexual penetration, and he was not proven guilty of criminal sexual assault.

¶ 17    As defendant points out, our supreme court has held that the "mere touching or rubbing of a victim's sex organ or anus with a hand or finger does not prove sexual penetration." *Maggette*, 195 Ill. 2d at 352; see also *People v. Lofton*, 303 Ill. App. 3d 501, 508 (1999). In this case, however, there was additional evidence beyond the testimony identified by defendant. The State introduced evidence from a vaginal swab performed on S.G. after the incident. The evidence showed that the doctor performed a vaginal exam of S.G. and took the vaginal swab.

The DNA analysis of the vaginal swab found that no semen was present, but male DNA was present. The Y-STR haplotype identified in the DNA analysis of the vaginal swab matched that of defendant.

¶ 18   The Criminal Code provides that a sexual penetration occurred if there was "any intrusion, however slight" of defendant's hand or finger into S.G.'s vagina. See 720 ILCS 5/11-0.1 (West 2018). When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements of the crime beyond a reasonable doubt. *People v. Gonzalez*, 239 Ill. 2d 471, 478 (2011). The combination of S.G.'s testimony, defendant's testimony, and the DNA evidence from the vaginal swab presents sufficient evidence from which a factfinder could find that a criminal sexual assault occurred.

¶ 19   Defendant posits that perhaps "skin cells or sweat left by [him] when he removed S.G.'s underwear could have transferred to S.G.'s vagina." Defendant continues by noting that "whether or not S.G. put her underwear back on, any sweat or skin cells left by [defendant] on the *outside* of S.G.'s vagina, or near the opening of S.G.'s vagina, could have also moved *into* her vagina as she engaged in physical movement after the alleged assault, and thus been collected upon entry if the swab was inserted therein." (Emphasis in original). The trial court, however, weighed the testimony and the other admissible evidence and reached the conclusion that defendant committed an act of sexual penetration.

¶ 20   A case submitted by the State in support of its position is instructive. In *People v. Hillier*, 392 Ill. App. 3d 66 (2009), this court held that there was sufficient evidence to prove that a defendant committed a sexual penetration where, at trial, the victim was asked "where did he place his finger?" and the victim answered, "my vagina." *Hillier*, 392 Ill. App. 3d at 68-69. The

court explained that a reasonable inference could be drawn from that testimony by a factfinder that the defendant penetrated the victim's vagina with his finger. *Id*. at 69. In this case, a rational trier of fact could find the required elements of the crime beyond a reasonable doubt.

¶ 21 The trial court heard the evidence and observed the witnesses testify. The trial court found that defendant committed an act of sexual penetration with his finger to S.G.'s vagina. In explaining its finding of guilt, the trial court expressly noted that S.G.'s testimony was corroborated by the DNA evidence that was presented through stipulations. There was sufficient evidence to support the trial court's finding. See *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 47; *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 71. When the evidence is viewed in a light most favorable to the State and reasonable inferences are drawn in its favor, defendant has failed to demonstrate any right to relief from this conviction.

¶ 22 Unlike criminal sexual assault, the offense of criminal sexual abuse does not require evidence of a penetration of a sex organ to sustain a conviction. Compare 720 ILCS 5/11-1.50 (West 2018) with 720 ILCS 5/11-1.20(a)(1) (West 2018). A person commits criminal sexual abuse when the person commits an act of sexual conduct by the use of force or threat of force. 720 ILCS 5/11-1.50(a)(1). The offense of criminal sexual abuse can become aggravated criminal sexual abuse when the victim is 60 years of age or older. See 720 ILCS 5/11-1.30(a)(5) (West 2018). The evidence at trial supported defendant's conviction for aggravated criminal sexual abuse.

¶ 23 Defendant does not challenge the sufficiency of the evidence relating to the offense of criminal sexual abuse. In charging defendant with aggravated criminal sexual abuse, the State alleged that defendant "licked S.G.'s breasts by the use or threat of force, and S.G. is 60 years of age or older." At trial, S.G. testified that defendant licked her breasts while he was restraining

her movement and she was resisting. Defendant likewise testified that he licked S.G.'s breasts; he, however, claimed that it was consensual. The factfinder in this case resolved that question of fact against defendant and in favor of the State.

¶ 24    In reviewing the evidence in its totality, the trial court expressly stated that it found credibility in S.G.'s testimony. On the other hand, the trial court found defendant not to be credible, noting that his testimony "lacked veracity" and later that it was "ridiculous" in light of all the other testimony elicited at trial. The trial court's finding with regard to the charge of criminal sexual abuse was supported by the evidence. Defendant's conviction for aggravated criminal sexual abuse, therefore, stands.

¶ 25    Defendant argues that his conviction for attempted aggravated criminal sexual assault should be reversed. Defendant was charged with attempted aggravated criminal sexual assault for exposing his penis to S.G. and demanding that she place her mouth on his penis by using force or the threat of force. Defendant contends that the State "failed to prove he specifically intended to force S.G. to place her mouth on his penis and took a substantial step toward the completion of that act."

¶ 26    "A person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2018). As it pertains to sex offenses, under the Criminal Code, "'[f]orce or threat of force' means the use of force or violence or the threat of force or violence, including, but not limited to *** when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement." 720 ILCS 5/11-0.1 (West 2018). Proof of specific intent to commit a sexual assault may be inferred from the circumstances of the assault. *People v. Montefolka*, 287 Ill. App. 3d 199, 207 (1997). The issue of force or threat of

force is a matter of credibility best left to the trier of fact who heard the evidence and saw the demeanor of the witnesses. *People v. Barbour*, 106 Ill. App. 3d 993, 998 (1982).

¶ 27 Defendant argues that the evidence did not establish that he used any force or threat of force with specific regard to his demand that S.G. put her mouth on his penis. Further, defendant claims that the evidence shows that he voluntarily relented from his pursuit of forced oral sex when S.G. said no and asked for a glass of water, and he left the room. We find neither argument persuasive.

¶ 28 Following a physical attack, defendant confronted S.G. and commanded her to perform oral sex on him. S.G. had moved to a different area of the room to try to get away from defendant and he followed her as she tried to move away from him. He was groping her, saying "this butt is mine." S.G. testified that defendant was able to restrain her as "he's a young guy; I'm an old lady." Just moments earlier, defendant physically dominated S.G. to subdue her against her will and commit acts of criminal sexual assault and criminal sexual abuse against her. See *infra* ¶¶ 21, 23. When she finally broke free from his grasp following the commission of those criminal acts, she moved away from him across the room, but he pursued her to her new location.

¶ 29 While S.G. was in a seated position, defendant stood over her, from one or two feet away, and removed his penis from his pants. Defendant commanded her to perform oral sex. The demand for oral sex was made just after the violent attack and after defendant had just sexually abused her. Defendant was in a position of dominance, and S.G. was frightened. When S.G. asked for a glass of water and defendant stepped out of the room, she ran out of the house for her safety. There was evidence to support the State's position that defendant attempted to overcome the will of S.G. by force or threat of force and that he exposed his penis and commanded the

victim to perform the sex act in furtherance of that attempted forcible sex act. As previously stated, the issue of whether there was force or the threat of force is a matter of credibility best left to the trier of fact who heard the evidence and saw the demeanor of the witnesses. *Barbour*, 106 Ill. App. 3d at 998-1001; *People v. Grathler*, 368 Ill. App. 3d 802, 808-09 (2006).

¶ 30    Defendant's characterization of the evidence, that he abandoned his pursuit of forced oral sex when S.G. said "no," requires that several inferences from the evidence be drawn in his favor. However, in a challenge to the sufficiency of the evidence on appeal, all reasonable inferences must be drawn in the State's favor. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 28. The record demonstrates that when defendant left the room after demanding oral sex, S.G. ran out of the house for her safety. There is no evidence that defendant ever gave up his intention or that he abandoned it on his own accord—he simply did not complete the offense and then could not complete the offense because S.G. ran outside. The case defendant relies upon for the proposition that he abandoned his intention to commit the sexual act, *People v. Montefolka*, 287 Ill. App. 3d 199 (1997), is distinguishable. In *Montefolka*, it was the defendant who left the scene after the victim gave him money to leave. See *id.* at 202. Here, there is evidence that the threatening encounter was terminated because S.G. was able to run out of the house, not because defendant had abandoned his intent to commit the offense. When the evidence is viewed in a light most favorable to the State and reasonable inferences are drawn in the State's favor, there was sufficient evidence introduced at trial to prove defendant guilty of attempted criminal sexual assault.

¶ 31    The final issue raised by defendant is that the trial court erred when it sentenced him on his conviction for aggravated criminal sexual assault. Defendant does not challenge the sentences

imposed on his convictions for aggravated criminal sexual abuse or attempted aggravated criminal sexual assault.

¶ 32    Defendant argues that the trial court erred when it considered the fact that S.G. was 60 years of age or older when sentencing defendant because the victim's age is a factor inherent in the offense. Our supreme court has explained that an element of the offense of which the defendant was convicted cannot also be used as an aggravating factor at sentencing. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). Defendant acknowledges that he forfeited this claim for review because he did not raise it at the sentencing hearing or in a posttrial motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010); see also *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). In the sentencing context, to establish plain error, a defendant bears the burden of showing that a clear or obvious error occurred and that either (1) the evidence at the sentencing hearing was so closely balanced that the error threatened to tip the balance, or (2) the error was so egregious as to deny defendant a fair proceeding. *Hillier*, 237 Ill. 2d at 545–46.

¶ 33    In this case, although the trial court noted the victim's age during the sentencing hearing, there is no indication that the sentence was enhanced based on the victim's age. The trial court noted at sentencing that the fact that defendant sexually assaulted his own mother-in-law was what was "profound about this incident." Just because the age of the victim was inherent in the crime does not mean the trial court was required to ignore the fact completely when assessing the severity of the crime. See *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986); *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 55. The evidence showed that defendant held down S.G. while she was kicking and screaming. He committed three forcible sex crimes against her inside her home. S.G. testified at the sentencing hearing about the severe impact that defendant's actions have had

11

on her life, on her family, and on her mental health. Defendant has failed to demonstrate plain error.

¶ 34    As an alternative basis for relief, defendant mentions that his trial counsel was ineffective for failing to properly object to the trial court's double consideration of the victim's age during sentencing. However, as outlined above, defendant has not affirmatively shown that the trial court erred. Moreover, defendant has not made any showing that he suffered prejudice as a result of his counsel's failure to object. See *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (to be entitled to relief on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that he suffered prejudice as a result).

¶ 35    Defendant also argues that the eight-year sentence imposed on the conviction for aggravated criminal sexual assault was excessive. Aggravated criminal sexual assault is a Class X felony, requiring a prison sentence of between 6 and 30 years. 720 ILCS 5/11-1.30(d)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). Defendant argues that the sentence imposed in this case was disproportionate to the nature of the offense and to his rehabilitative potential.

¶ 36    A trial court has broad discretion in sentencing and its sentencing decisions should be reversed only when the trial court abuses that discretion. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). When a trial court imposes a sentence within the applicable sentencing range, the sentence is presumptively proper. *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 105. When the trial court imposes a sentence within the sentencing range, the sentence will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Branch*, 2018 IL App (1st) 150026, ¶ 34.

¶ 37    Defendant contends that the conduct that led to his conviction for aggravated criminal sexual assault "did not warrant a sentence over the minimum." Defendant points to the lack of physical injuries incurred by S.G., the few factors in aggravation, and other circumstances in defendant's life, such as his employment, ties to the community, and familial relationships, that favor a minimum sentence. Defendant also points out that he was 37 years old at the time of the offense and had no prior criminal history. Defendant argues that the sentence imposed in this matter does not adequately account for his rehabilitative potential or the fact that he was unlikely to reoffend in the future. Defendant concludes that his eight-year sentence violates the Illinois Constitution (citing Ill. Const. (1970), art. I, §11)).

¶ 38    We find that the trial court acted within its discretion in sentencing defendant where it duly weighed the nature and circumstances of the offense, considered aggravating and mitigating factors, and fashioned a sentence only two years over the statutory minimum. On appeal, we do not reweigh the evidence that the trial court considered when delivering a sentence. *People v. Jones*, 2015 IL App (1st) 142597, ¶ 40. The reviewing court may not reverse a trial court's sentencing decisions just because it may have weighed the relevant factors differently or arrived at a different conclusion. *Id*. at ¶ 39. Defendant has not demonstrated that his sentence is excessive or that the trial court otherwise abused its discretion in fashioning his sentence.

¶ 39                              CONCLUSION

¶ 40    Accordingly, we affirm.

¶ 41    Affirmed.