2025 IL App (1st) 230807-U

No. 1-23-0807

March 11, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 11813 |
| | ) | |
| ASA SMITH, | ) | Honorable |
| | ) | Carl Boyd, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

ORDER

¶ 1     *Held*: Postconviction counsel provided reasonable assistance where counsel was not required to present phone records outside the record to support defendant's claim of ineffective assistance of trial counsel.

¶ 2    Defendant Asa Smith appeals the second-stage dismissal of his postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)).[1] On appeal, defendant asserts that postconviction counsel provided unreasonable assistance by failing to obtain and attach phone records to his petition that would have corroborated his claim that he had an ongoing, consensual sexual relationship with the victim he was accused of sexually assaulting. We affirm.

¶ 3    Defendant was charged by indictment with counts of home invasion, aggravated kidnapping, aggravated criminal sexual assault, attempted aggravated criminal sexual assault, and aggravated criminal sexual abuse. Following a 2019 bench trial, he was convicted of aggravated criminal sexual assault, attempted aggravated criminal sexual assault, and aggravated sexual abuse of his mother-in-law. He received a total sentence of 12 years in prison. We affirmed on direct appeal. *People v. Smith*, 2021 IL App (1st) 191218-U.

¶ 4    We incorporate parts of our summary of the trial testimony as set forth on defendant's direct appeal.

¶ 5    S.G. testified that she had known defendant "[p]ractically all his life," as they went to the same church and defendant was married to her daughter. Around 6 a.m. on July 11, 2017, defendant came to S.G.'s home to perform plumbing work. After S.G. let defendant inside, he grabbed her from behind in a "bear hug." S.G. fell backward onto a couch as she wrestled to get loose from defendant's grip, and defendant landed on top of her. S.G. struggled and screamed for

---

[1] Defendant also refers to himself as "Asa Smith-El" in the record. We refer to defendant as "Asa Smith," the name used in the majority of the trial proceedings and in this court's decision on direct appeal. See *People v. Smith*, 2021 IL App (1st) 191218-U.
.

defendant to let her go. S.G. testified that defendant held her down with one of his forearms against her chest and used his other hand to "snatch" off her underwear. Defendant then tried to "get down to [her] vagina with his hand." S.G. kept her legs closed because she "realiz[ed] what he [was] trying to do." S.G. confirmed that defendant's hand and fingers made contact with her vagina. S.G. testified that defendant then pulled down her gown and licked her breasts.

¶ 6 S.G. testified that she bit defendant's hand, escaped his grasp, and moved to another area of the room. Defendant followed her, groping her buttocks and thighs. Defendant then stood in front of her, took out his penis, and told her to suck his penis. She refused. She then asked defendant to get her a glass of water, and when he went to the kitchen to get water for her, she was able to run outside of the house.

¶ 7 After a few minutes, defendant came outside. S.G. was crying, and defendant asked why she had run out of the house. She told defendant that she was going to call the police. Defendant responded that he would say she was "the one coming on to [him]." A few minutes later, defendant got into his vehicle and left, and S.G. called the police. After speaking to police, S.G. was taken to the hospital for examination.

¶ 8 Catherine Simonek, the nurse who tended to S.G., testified that S.G. told her someone had assaulted her. S.G. told Simonek that the person put his mouth on her nipple and fondled her with his finger. Simonek administered a sexual assault kit that included taking a swab of S.G.'s nipple and a vaginal swab. The State entered stipulations that defendant's DNA profile matched the DNA found on the swab taken from S.G.'s nipple, and the DNA from the vaginal swab matched the Y-STR haplotype of defendant.

¶ 9    Defendant testified that he did have a sexually related encounter with his mother-in-law that morning. However, he testified that it was consensual and that the two of them had engaged in approximately 10 sexual encounters previously. Defendant had been married to S.G.'s daughter for 20 years, and he began having sexual encounters with S.G. 10 years into his marriage.

¶ 10    Defendant stated that, on the morning in question, he arrived at S.G.'s home and, when he entered, she bent over in front of him as if to pick something up off the floor. Defendant began to rub her butt, as he had done in the past, and he started kissing her neck. S.G. pulled out her breast and laid on the couch. Defendant touched and sucked on her breast and assisted her in removing her underwear. Defendant testified that S.G. opened her legs and placed his hand on her vagina. Defendant claims that S.G. wanted him to engage in intercourse, but he refused. He testified that he told S.G. that they needed to stop engaging sexually and that he was going to tell his wife, S.G.'s daughter, about what they were doing. Defendant claims that S.G. threatened that, if he told his wife, S.G. was going to call the police. Defendant then left S.G.'s residence.

¶ 11    Defendant testified that, later that day, he called S.G. about four times because he wanted to find out why she was "going around telling the law" and "people" that he "raped her." S.G. told him that she "did what she did" because defendant "should have never tried to tell [his] wife" about their sexual relationship. During defendant's cross-examination, the State entered by stipulation the phone records from July 11, 2017, for the phones registered to S.G. and defendant. Defendant stated, "I'm always calling [S.G.]. I call her at different times," and continued, "In the morning. In the evening. At night. I'm always calling."

¶ 12    In rebuttal, the State called defendant's wife, Chantel Smith.[2] Chantel testified that, on July 11, 2017, she spoke on the phone with defendant, who told her "They [are] saying that I raped your mother." Defendant told Chantel that he had been working at her mother's home and was on a ladder. The ladder "hit up against the door," and defendant "felt like [S.G.] thought he was trying to bust the door down." S.G. "came out and was attacking and biting him." When "everything came out" months later, defendant told Chantel that he had a consensual sexual "encounter" with S.G.

¶ 13    The court found defendant guilty of aggravated criminal sexual assault, attempted aggravated criminal sexual assault, and aggravated criminal sexual abuse. It sentenced defendant to eight years for aggravated criminal sexual assault, as well as four years for attempted aggravated criminal sexual assault and three years for aggravated criminal sexual abuse, to run concurrent to one another but consecutive to the eight-year sentence.

¶ 14    We affirmed on direct appeal. *People v. Smith*, 2021 IL App (1st) 191218-U.

¶ 15    On December 14, 2020, while defendant's appeal was pending, defendant filed *pro se* a pleading titled "Grounds For Relief From Conviction."

¶ 16    On December 22, 2020, defendant filed *pro se* a postconviction petition. Defendant alleged in relevant part that trial counsel "failed to introduce the phone records to corroborate the relationship between the Defendant and [S.G.]."

¶ 17    On December 17, 2021, more than 90 days after defendant filed his petition, defendant was appointed counsel and the postconviction claims proceeded to the second stage.

---

[2] Because defendant and Chantel Smith share the same last name, we refer to Chantel Smith by her first name.

¶ 18     On July 29, 2022, defendant's postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Counsel certified that she reviewed the trial and court files, looking "specifically for any and all Pre-trial motions for discovery and Motions for a New Trial." Counsel further certified that she has not filed an amended postconviction petition because defendant's *pro se* petition adequately set forth his claim of deprivation of his constitutional rights.

¶ 19     On August 10, 2022, the State filed a motion to dismiss defendant's postconviction petition. The State argued that defendant failed to provide any attachments or an affidavit to support his claim that trial counsel failed to introduce phone records into evidence at trial.

¶ 20     On April 14, 2023, following a hearing, the circuit court dismissed defendant's petition. The court found that trial counsel did not provide ineffective assistance simply by choosing a trial tactic that proved to be unsuccessful.

¶ 21     On appeal, defendant argues that postconviction counsel provided unreasonable assistance and violated her duties under Rule 651(c) by failing to attach the phone records to support his claim that he had an ongoing and consensual sexual relationship with S.G. for years.

¶ 22     The Act provides a three-stage method for criminal defendants to challenge their convictions or sentences for violation of federal or state constitutional rights. *People v. Knapp*, 2020 IL 124992, ¶ 43. Defendant's petition was dismissed at the second stage of proceedings, where counsel may be appointed to represent the defendant and the State may file responsive pleadings. *People v. House*, 2021 IL 125124, ¶ 17. At the second stage, if the State files a motion to dismiss the petition, the circuit court must decide whether to grant the State's motion or advance the petition to the third stage for an evidentiary hearing. *People v. Dupree*, 2018 IL 122307, ¶ 28.

A petitioner is only entitled to a third-stage evidentiary hearing where "the allegations in the petition supported by affidavits, records, or other evidence [citation] make a substantial showing" of a deprivation of constitutional rights. (Internal quotation marks omitted.) *Id.*

¶ 23   Here, defendant does not challenge the dismissal of his postconviction petitions on the merits, but rather asserts that postconviction counsel provided unreasonable assistance by not sufficiently presenting his claim that trial counsel failed to submit certain phone records to corroborate his relationship with S.G. into evidence at trial.

¶ 24   There is no constitutional right to the assistance of counsel in postconviction proceedings, as the right to counsel is "a matter of legislative grace." (Internal quotation marks omitted.) *People v. Addison*, 2023 IL 127119, ¶ 19. "[A] postconviction petitioner is entitled only to the level of assistance granted by the Act," which our supreme court has labeled "a reasonable level of assistance." (Internal quotation marks omitted.) *Id.* This standard is "significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *People v. Huff*, 2024 IL 128492, ¶ 21. Postconviction counsel is appointed "not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *Addison*, 2023 IL 127119, ¶ 19.

¶ 25   To ensure that postconviction petitioners receive a reasonable level of assistance, Rule 651(c) outlines postconviction counsel's duties. *People v. Custer*, 2019 IL 123339, ¶ 32. Rule 651 "sharply limits the requisite duties of postconviction counsel." *Id.* Counsel need only certify that they have (1) consulted with the defendant by phone, mail, or other means to ascertain the defendant's contentions of deprivation of constitutional rights, (2) examined the record as needed

to shape the defendant's *pro se* claims, and (3) made any amendments to the *pro se* petitions that are necessary for an adequate presentation of those claims. *Id.* "Substantial compliance with Rule 651(c) is sufficient." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18.

¶ 26    Postconviction counsel's filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance. *Id.* ¶ 19. The defendant bears the burden of overcoming that presumption by showing postconviction counsel did not substantially comply with the strictures of the rule. *Addison*, 2023 IL 127119, ¶ 21. The defendant may do so by "demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition." *Id.*

¶ 27    Postconviction counsel is not required to "amend a petition to advance frivolous or spurious claims on a defendant's behalf." *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 30. Thus, where there is a presumption of reasonable assistance, "the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition." (Internal quotation marks omitted.) *Id.* "If the defendant claims that evidence missing from his petition exists outside the record, postconviction counsel has no duty to find that evidence." *People v. James*, 2023 IL App (1st) 192232, ¶ 38.

¶ 28    We review a counsel's substantial compliance with Rule 651(c)'s requirements *de novo*. *People v. Smith*, 2020 IL App (1st) 181220, ¶ 13.

¶ 29    Here, postconviction counsel filed a Rule 651(c) certificate certifying that she reviewed the record and decided not to file an amended postconviction petition as defendant adequately set forth his claims of deprivation of his constitutional rights. Given the certificate's filing, a rebuttable presumption exists that postconviction counsel provided reasonable assistance. *Profit*, 2012 IL

App (1st) 101307, ¶ 19. We find defendant has failed to meet his burden to rebut that presumption, and so we must presume he received reasonable assistance of postconviction counsel.

¶ 30    The evidence at trial showed that defendant entered the house of his mother-in-law, S.G., to perform plumbing work and sexually assaulted her while he was there. Defendant testified that he had been having a sexual relationship with S.G. and that the incident in question was a consensual sexual encounter. Phone records limited to the date of July 11, 2017, were entered into evidence to illustrate the communications between defendant and S.G. following the incident.

¶ 31    In his postconviction petition, defendant claimed that trial counsel provided ineffective assistance when he "failed to introduce the phone records to corroborate the relationship between the Defendant and [S.G.]." On appeal, defendant now asserts that postconviction counsel performed unreasonably by not attaching the phone records to his petition to support his ineffective assistance of trial counsel claim. At trial, phone records of defendant and S.G. from the date of the incident were entered into evidence. Postconviction counsel had no obligation to find evidence beyond what was in the record, if that evidence was even available to be discovered. See *James*, 2023 IL App (1st) 192232, ¶ 38 (postconviction counsel had no obligation to amend the defendant's postconviction petition with photographs outside the record). Thus, we cannot find that postconviction counsel acted unreasonably for not attaching phone records when counsel had no obligation to do so.

¶ 32    Moreover, postconviction counsel was not required to amend the ineffective assistance claim premised on the failure to submit additional phone records as the claim would have lacked merit. *Gallano*, 2019 IL App (1st) 160570, ¶ 30.

¶ 33    To prevail on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must demonstrate both "that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 19. During second-stage postconviction proceedings, the defendant must make "(1) a substantial showing that counsel's performance was objectively unreasonable under prevailing professional norms and (2) a substantial showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. White*, 2021 IL App (1st) 170903, ¶ 35. A defendant must satisfy both prongs of the *Strickland* test to prevail on an ineffective assistance of counsel claim. *People v. Johnson*, 2021 IL 126291, ¶ 53. Because the prejudice prong is dispositive, we proceed directly to that prong. *Id.*

¶ 34    Here, phone records for defendant and S.G. from the day of the incident were entered into evidence. While defendant claims that additional phone records would have corroborated his defense of consent, he failed to set forth a specific timeframe for these additional records and provided no explanation as to what specifically the records would show to corroborate his version of the events. The mere fact that phone records would show defendant had a history of communicating with his mother-in-law would not demonstrate that the two had an ongoing, consensual sexual relationship, much less that the sexual encounter in question was consensual.

¶ 35    Thus, defendant could not have shown a reasonable probability that his trial would have returned a favorable outcome for him had trial counsel submitted additional phone records into evidence. *White*, 2021 IL App (1st) 170903, ¶ 35. Postconviction counsel was not required to amend defendant's petition to advance his ineffective assistance claim based on the phone records

when the claim would have lacked merit anyway. *Gallano*, 2019 IL App (1st) 160570, ¶ 30. For those same reasons, it cannot be said that postconviction counsel provided unreasonable assistance for not addressing the State's contention that defendant failed to support his claim regarding the phone records with documentation as the claim lacked merit. See *Huff*, 2024 IL 128492, ¶ 31.

¶ 36     In conclusion, we find that defendant has not rebutted the presumption that postconviction counsel provided reasonable assistance in presenting his postconviction petition. We therefore affirm the court's dismissal of his postconviction petition over defendant's contention that postconviction counsel provided unreasonable assistance under Rule 651(c).

¶ 37     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 38     Affirmed.