# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black; padding:10px;">

## *People v. White*, 2021 IL App (1st) 170903

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEAROLD WHITE, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Nos. 1-17-0903, 1-19-0222 cons. |
| Filed | June 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 92-CR-25286, 08-CR-05425; the Hon. Michael B. McHale and the Hon. Charles P. Burns, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Adrienne N. River, of State Appellate Defender's Office, of Chicago, for appellant<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Jon Walters, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Reyes and Martin concurred in the judgment and opinion. |

**OPINION**

¶ 1       In this consolidated appeal, defendant Dearold White appeals the dismissal of two different postconviction petitions, stemming from two different offenses. Defendant appeals (1) a first-stage dismissal in case No. 92 CR 25286 and (2) a second-stage dismissal in case No. 08 CR 5425.

¶ 2       In the first case, defendant pleaded guilty to the criminal sexual assault of D.M., and he was initially sentenced to four years' probation. Later he pleaded guilty to a violation of probation and was sentenced to four years in the Illinois Department of Corrections (IDOC).

¶ 3       In the second case, defendant was convicted after a jury trial of the aggravated criminal sexual assault of L.H. and sentenced to natural life imprisonment. 720 ILCS 5/12-14 (West 2006) ("Aggravated Criminal Sexual Assault"). The natural life sentence was mandatory, "as a result of his prior criminal sexual assault conviction" in the 1992 case. *People v. White*, 2012 IL App (1st) 110662-U, ¶ 2; 720 ILCS 5/12-14(d)(2) (West 2010)[1] ("A person *** who is convicted of the offense of aggravated criminal sexual assault after having previously been convicted of the offense of criminal sexual assault *** shall be sentenced to a term of natural life imprisonment.").

¶ 4       In this consolidated appeal, defendant claims, with respect to the first case, that he is actually innocent of the offense and that, although he already served his four-year sentence for this offense, he still has standing to challenge the conviction because he is currently serving a life sentence that was mandatory because of it. In response, the State does not dispute that defendant made a sufficient claim of actual innocence but argues solely that defendant lacks standing under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)).

¶ 5       After this appeal was briefed, our supreme court rejected defendant's argument and found that "a sentence that was aggravated in part by a prior *** conviction" does not confer standing to challenge the prior conviction. *People v. Johnson*, 2021 IL 125738, ¶¶ 63, 67. In addition, the *Johnson* court found that this was a proper basis on which to dismiss a petition at the first stage as frivolous and patently without merit. *Johnson*, 2021 IL 125738, ¶ 50. In light of our supreme court's recent decision in *Johnson*, there is no doubt that defendant lacks standing in the first case and that the trial court's summary dismissal was proper. Thus, we affirm the dismissal in the first case.

¶ 6       With respect to the second case, defendant alleges that his trial counsel was ineffective, first, for failing to deliver on a promise allegedly made in defendant's opening statement that the jury would hear from a nurse who would testify that the victim claimed to have had sex with defendant prior to the date of the offense. Second, defendant alleges that his trial counsel was ineffective for failing to call the nurse also because her testimony would have perfected counsel's attempted impeachment of the victim. Third, defendant alleges that his trial counsel failed to object to a question by the State on redirect examination that asked the victim whether she had had sex prior to the offense date. Lastly, defendant alleges that his appellate counsel was ineffective for failing to raise his trial counsel's ineffectiveness.

---

[1]Defendant was sentenced on February 23, 2011. This section was renumbered, effective July 1, 2011, as section 11-1.30 of the Criminal Code of 1961.

¶ 7     For the following reasons, we also affirm the dismissal of the second case.

¶ 8                                    BACKGROUND

¶ 9     Since the only issue raised on this appeal regarding case No. 92 CR 25286 was the purely legal question of standing, which was subsequently decided by our supreme court, we provide below solely the facts related to case No. 08 CR 05425.

¶ 10    This court already described at length the facts in case No. 08 CR 05425 when we affirmed defendant's conviction and sentence on direct appeal. *White*, 2012 IL App (1st) 110662-U, ¶ 1. Thus, we incorporate that order by reference and provide below the facts necessary to understand the issues raised on the instant appeal.

¶ 11    At the time of the offense, defendant was 30 years old, and L.H., the victim, was 13 years old. Defendant conceded at trial that he had sex with L.H., after DNA testing confirmed that he was the father of the resulting fetus. Although this court has found that mistake of age is not a defense to age-based sex charges, the trial court erroneously instructed the jury that it was a defense. *White*, 2012 IL App (1st) 110662-U, ¶ 4. Since neither party "raised this instruction as an issue" on direct appeal, this court did not consider it at that time. *White*, 2012 IL App (1st) 110662-U, ¶ 4. In addition, the State did not "ask us on [the direct] appeal to find, as a matter of law, that the victim's age alone established that she lacked the ability to consent." *White*, 2012 IL App (1st) 110662-U, ¶ 5. Similarly, the State has also not asked us on this appeal to make such a finding. In its brief to this court, the State merely observes in a footnote: "It bears noting that [defendant] already benefitted from having a defense at trial that he ought not to have had."

¶ 12    At trial, in defendant's opening statement, counsel admitted that defendant had sex with the 13-year-old victim but argued that the sex was consensual. Counsel argued that the victim claimed she had been raped because she did not want to admit to her mother that she had been having sex. Counsel argued that "you are going to hear all this from her own mouth and from the testimony of other witnesses." The following section of defense counsel's opening statement is at issue on this appeal, so we provide that section here in full:

> "COUNSEL: We also want you to pay attention to who testifies and who does not testify. Multiple statements were made to Chicago police detectives. Is the State going to call any of those detectives? Statements were made to nurses and ER doctors. Is the State going to call any of those medical personnel?
>
> [L.H.] told the nurse of the ER—
>
> ASSISTANT STATE'S ATTORNEY [(ASA)]: Judge, I am going to object at this point.
>
> THE COURT: The objection is going to be overruled. Please confine your opening statements to evidence that you're going to be able to—that is going to be heard at this point.
>
> COUNSEL: Absolutely.
>
> THE COURT: The objection is overruled.
>
> COUNSEL: [L.H.] told the nurse at the ER that this Labor Day sexual encounter, that wasn't the first time she had sex with [defendant]. She admitted to having sex with him one month previously in August."

¶ 13    At trial, the evidence established that the victim's mother had a close friend, about whom the mother testified that they were "like sisters." Defendant was the friend's boyfriend. Over Labor Day weekend in 2006, the victim's family spent the weekend at the friend's house in Chicago, with the friend's family. On Labor Day, while the victim's mother was starting the barbecue, defendant offered to take the victim for a drive, and the mother agreed. When defendant returned without the victim, he stated that the victim had gone instead to her godmother's home, which was two blocks away. At 9 p.m., the victim's mother called the godmother's home and told the victim to return to the friend's house, which she did. Defendant then drove the victim and her family back to their home in Du Page County.

¶ 14    In October 2006, four weeks after Labor Day, the victim's school called the victim's mother to inform her that the victim had been sick at school. The victim's mother took her to a hospital, where she received a pregnancy test in the emergency room that confirmed her pregnancy. Later, at home, the victim told her mother that defendant was the father.

¶ 15    At the time of the trial, the victim was 17 years old. She testified that, on Labor Day 2006, when she was 13 years old, defendant drove her to a public park and parked his vehicle. When defendant began touching her, she repeatedly told him that she "want[ed] to go home" and that she "want[ed] [her] mama." In response, defendant kept telling her to "[s]top being a little girl" and "[a]ct like a big girl." When he started ripping her clothes, she was "fighting, screaming, pushing, kicking, fighting, everything." Then defendant raped her. The victim testified that "it hurt real bad" and that she was bleeding, with the blood running down her legs. Afterwards, defendant told her, "Don't tell nobody. If you tell somebody, I'm going to hurt you and your family. I know where you live. I know what school you go to." Defendant then drove, stopping halfway between the friend's house and the godmother's house. After the victim exited the vehicle, he told her to go to her godmother's house, which she did. When she arrived, no one was home. The victim changed into clean clothes that she had at the house and threw her bloody clothes in a garbage can in the alley. When her mother called at 9 p.m., she returned to the friend's home.

¶ 16    On cross-examination, the victim testified that, after her mother took her to the hospital, the hospital nurse asked her if she had been "sexually active." Defense counsel asked, "And you told her that you and [defendant] had sex?," to which she responded, "No, sir." The following testimony on this topic is an issue on this appeal, so we provide it below:

"COUNSEL: Now, [L.H.] this encounter between you and [defendant] on Labor Day, that wasn't the first time you and [defendant] had sex, isn't that right?

L.H.: What?

COUNSEL: You and [defendant] had had sex previous to Labor Day of that year?

L.H.: No, sir.

COUNSEL: So, is it your testimony that you are denying you and [defendant] ever had sex prior to Labor Day of 2006?

L.H.: Yes, sir.

COUNSEL: And so did you ever tell—you went to the emergency room in October of '06?

L.H.: Did I ever tell what?

COUNSEL: You went to the emergency room in October of 2006?

L.H.: Yes, sir.

COUNSEL: And you spoke to a nurse there?

L.H.: Yes, sir.

COUNSEL: And you told the nurse—

ASA: Objection, Judge.

THE COURT: Objection overruled.

COUNSEL: You told the nurse you and [defendant] had sex previous to Labor Day.

L.H.: No, sir.

COUNSEL: So you're saying that you [n]ever made that statement to the nurse?

L.H.: Yes, sir.

COUNSEL: Was your mom with you while you were talking to the nurse in the emergency room?

L.H.: I never talked to the nurse. My mom talked to the nurse."

L.H. testified that, at the hospital, "[t]hey never talked to us, [or] asked us any question about anything." On redirect examination, the State asked the following question, which defendant claims that counsel was ineffective for failing to object to:

"ASA: [L.H.], had you had sex before Labor Day of 2006?

L.H.: No, ma'am."

¶ 17    Following the jury trial, defendant was convicted of aggravated criminal sexual assault and sentenced to mandatory life in prison. At sentencing, the trial court observed that, pursuant to section 12-14(d)(2)[2] of the Criminal Code of 1961 (720 ILCS 5/12-14(d)(2) (West 2010)), a natural life sentence was mandatory, since defendant had previously been convicted of criminal sexual assault. On appeal, this court affirmed defendant's conviction. *White*, 2012 IL App (1st) 110662-U, ¶ 143.

¶ 18    On July 2, 2013, defendant filed a *pro se* postconviction petition, which was advanced to the second stage, and counsel was appointed. Attached to the amended petition, which counsel filed, was an exhibit that purported to be handwritten notes from the victim's hospital records. The notes stated that the victim was raped on Labor Day 2006 by "Mom's best friend's boyfriend." The notes further stated: "Upon further questioning, [patient] states that first rape occurred early August. Then again on [L]abor [D]ay. [Patient] denies sexual intercourse outside these 2 incidents. Man did not use condoms either time. *** [Patient] notes this is the 1st sexual intercourse." The notes are not signed or initialed and do not contain the name of the person who wrote them. Defendant's amended petition did not identify the name of the notes' author or provide an affidavit from him or her. The State filed a motion to dismiss, and the trial court held a second-stage hearing. The judge at the second-stage hearing was the same judge who had presided over defendant's trial.

¶ 19    At the hearing, the trial court found unpersuasive defendant's claim that counsel was ineffective for failing to deliver evidence allegedly promised during defendant's opening statement. First, the trial court observed that "it is not accurate to say defense counsel promised to present the nurse's testimony. Rather, counsel suggested that the State's evidence was not the whole story ***." Second, the trial court found that, "[t]o the extent that [c]ounsel's

[2]Defendant was sentenced on February 23, 2011. This section was renumbered, effective July 1, 2011, as section 11-1.30 of the Criminal Code of 1961.

- 5 -

opening suggested to the jury they would hear about what [the victim] told the nurse, they did when [the victim] *** was cross-examined about it." Third, the court observed that counsel successfully impeached the victim without the nurse, finding that "[t]he jury heard that [the victim] made inconsistent answers about whether she spoke to the nurse at all. So [the victim] was already impeached and calling the nurse to testify would not have added anything to what the jury had already heard." Lastly, the trial court observed that defendant had failed to provide an affidavit from the nurse and that "the nurse's testimony might have been unfavorable to" defendant, since the notes indicated that the victim had been raped once before by defendant. The court observed that "more testimony on what [the victim] told the nurse could have risked introducing evidence that [defendant] might have raped her twice." For all these reasons, the trial court found that defendant had failed to make a substantial showing of ineffectiveness on this basis.

¶ 20    With respect to defendant's claim of ineffectiveness regarding one question by the State, the trial court found as follows:

> "With regard to the allegations of the failure *** to object to [the victim's] testimony on redirect examination that she never had sex prior to Labor Day, [defendant] claims that [the victim's claimed virginity] *** prejudiced him by causing undue sympathy for [the victim]. On this claim [defendant] takes this testimony at issue out of context. On cross-examination defense counsel asked [the victim] about the discussion with the emergency room nurse and *** defense counsel asked whether Labor Day was her first sexual encounter with [defendant]. She answered it was and counsel attempted to impeach while asking whether she told the nurse she had sex with [defendant] another time before Labor Day. She was impeached when she said she never talked to the nurse at all. The State's question on redirect was elicited in rebuttal. Given defense strategy, the defense could not reasonably object to the question on redirect. Even so, admissibility of the victim's virginity is not necessarily reversible error."

After finding these claims unpersuasive, the trial court granted the State's motion to dismiss.

¶ 21    On December 5, 2018, defendant filed a motion to reconsider, which the trial court denied on January 2, 2019. Defendant filed a notice of appeal on January 2, 2019, and this appeal followed.

¶ 22                                    ANALYSIS
¶ 23                            I. Postconviction Stages
¶ 24    Defendant seeks relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), which provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition only if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 25    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2018); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court

must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 26 If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as fact finder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 27                                   II. The Second Stage

¶ 28 Defendant's petition in the second case was dismissed at the second stage.

¶ 29 The issue at a second-stage hearing is whether the petitioner made a substantial showing, such that an evidentiary hearing is warranted. *People v. Sanders*, 2016 IL 118123, ¶ 37. At the second stage, the allegations in the petition are "liberally construed in favor of the petitioner." *Sanders*, 2016 IL 118123, ¶ 31. "All well-pleaded factual allegations must be taken as true ***." *Sanders*, 2016 IL 118123, ¶ 37. "[T]here are no factual issues" at the second stage. *Sanders*, 2016 IL 118123, ¶ 31. "Credibility determinations may be made only at a third-stage evidentiary hearing." *Sanders*, 2016 IL 118123, ¶ 42.

¶ 30 At the second stage, a court considers only the proofs attached by defendant to his petition and the record of his original trial proceedings. *Sanders*, 2016 IL 118123, ¶¶ 45, 48. The Act requires a petitioner to attach to his petition "affidavits, records, or other evidence supporting the petition's allegations or state why the same are not attached." *Sanders*, 2016 IL 118123, ¶ 45 (citing 725 ILCS 5/122-2 (West 2014)). The court must accept as true both the petition's allegations and its supporting evidence "unless they are positively rebutted by the record of the original trial proceedings." *Sanders*, 2016 IL 118123, ¶ 48.

¶ 31 When no evidentiary hearing is held, a reviewing court's standard of review is *de novo*. *Sanders*, 2016 IL 118123, ¶ 31 (a second-stage dismissal is reviewed *de novo*). *De novo* consideration means that we will perform the same analysis that a trial judge would perform. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 107.

¶ 32                                   III. *Strickland* Test

¶ 33 Defendant's claim in the second case is that trial counsel was ineffective and that appellate counsel was ineffective for failing to assert trial counsel's ineffectiveness.

¶ 34 To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the familiar two-prong *Strickland* test: (1) that his counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant. *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶ 35 Combining both the standard for a second-stage dismissal with the standard for ineffective assistance of counsel, a defendant at this stage must make (1) a substantial showing that counsel's performance was objectively unreasonable under prevailing professional norms and (2) a substantial showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 36.

¶ 36 "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial

unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376-77 (2000).

¶ 37　　　Although the *Strickland* test is a two-prong test, our analysis may proceed in any order. To prevail, a defendant must satisfy *both* prongs. *People v. Colon*, 225 Ill. 2d 125, 135 (2007); *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Thus, if a defendant cannot satisfy one prong, no further analysis is needed. *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 38　　　"The *Strickland* standard applies equally" to claims concerning trial and appellate counsel. *People v. Petrenko*, 237 Ill. 2d 490, 497 (2010). If a defendant claims that appellate counsel was ineffective for failing to raise a claim of trial error, a defendant must show not only that appellate counsel's performance was deficient but also that there is a reasonable probability that the underlying claim of trial error would have succeeded on direct appeal. *Petrenko*, 237 Ill. 2d at 497. If the underlying claim would not have succeeded on direct appeal, then "there is no arguable legal basis" for defendant's claim of ineffective assistance of appellate counsel, and dismissal is "proper." See *Petrenko*, 237 Ill. 2d at 501-02. For the reasons discussed below, we find that defendant's underlying claims would not have succeeded on direct appeal and, thus, there is no arguable basis for a claim regarding appellate counsel.

¶ 39　　　　　　　　　　　　IV. Defendant's Ineffectiveness Claims

¶ 40　　　Defendant's first ineffectiveness claim against trial counsel is that counsel allegedly made a promise in defendant's opening statement to present testimony from a hospital nurse and then failed to deliver on that promise.

¶ 41　　　This claim fails because no such promise was made. In defendant's opening statement, defense counsel asked the jury "to pay attention to who testifies and who does not testify." Then, counsel listed groups of people who would *not* testify and introduced each group with the following rhetorical question: "Is the State going to call [this group]?"

¶ 42　　　For example, counsel asked: "Multiple statements were made to Chicago police detectives. Is the State going to call any of those detectives?" Similarly, counsel asked: "Statements were made to nurses and ER doctors. Is the State going to call any of those medical personnel?" Counsel's point was that the jury was *not* going to hear from *any* of these people, including any nurses.

¶ 43　　　After counsel argued "Is the State going to call any of those medical personnel? [L.H.] told the nurse of the ER—," the State objected. In response, the trial court instructed counsel to "confine" opening remarks to evidence "that is going to be heard." However, the trial court overruled the objection, and counsel picked up right where he had left off, stating: "[L.H.] told the nurse at the ER that this Labor Day sexual encounter, that wasn't the first time she had sex with [defendant]. She admitted to having sex with him one month previously in August."

¶ 44　　　Defendant's brief to this court does not argue that counsel's remarks constituted an explicit promise but rather that "[i]t would have been reasonable for the jury to interpret" this statement as a promise to provide this evidence, particularly in light of the trial court's admonishment to stick to evidence that "is going to be heard." However, it would have been just as reasonable for the jury to interpret counsel's remarks in light of the remarks that counsel had just made, listing the evidence that the jury would *not* hear.

¶ 45     To the extent that the defense wants to impute the court's remarks to counsel, counsel's remarks could be understood as setting up the expectation that the victim would be questioned about these statements—and she was—thereby fulfilling any alleged promise.

¶ 46     For the foregoing reasons, we cannot find counsel made a promise to present testimony from the nurse in defendant's opening statement, and thus we are not persuaded by an ineffectiveness claim based on this alleged promise.

¶ 47     Second, defendant argues that counsel failed to perfect his impeachment of the victim when he failed to call the nurse at trial. Attached to the amended postconviction petition was an exhibit that purported to be handwritten notes from the victim's hospital records. The notes contain a statement by the victim that defendant had raped her prior to the assault on Labor Day and that her contact with defendant was her "1st sexual intercourse."

¶ 48     Defendant claims that, once the victim denied having intercourse with defendant prior to Labor Day, trial counsel was ineffective "for failing to perfect his attempted impeachment" of the victim. Defendant argues that, to perfect the impeachment, counsel should have called the nurse to whom the victim had made a prior statement inconsistent with this testimony.

¶ 49     First, counsel did not merely attempt to impeach the victim but did, in fact, impeach the victim when the victim testified that she had spoken to a nurse at the hospital and then did a complete about-face and denied having talked to the nurse at all. This impeachment was particularly effective because it happened right in front of the jury—both the victim's original statement that she had spoken to the nurse and then her subsequent statement denying that she had—and because both statements were made under oath and made, undoubtedly, by the victim herself. Thus, it is incorrect to call counsel's impeachment on this topic merely "attempted."

¶ 50     The question then becomes what counsel would have gained by introducing evidence stating explicitly that defendant had "rape[d]" the victim once before. The decision of which witnesses to call and what evidence to present are usually matters of trial strategy, and " 'matters of trial strategy are generally immune from claims of ineffective assistance of counsel.' " *People v. Custer*, 2019 IL 123339, ¶ 39 (quoting *People v. Dupree*, 2018 IL 122307, ¶ 44).

¶ 51     In addition, defendant's second-stage petition did not attach an affidavit from the nurse or identify the nurse. Although dismissal for lack of an affidavit at the first stage is "at odds" with the purpose of "a first-stage determination," the lack of an affidavit is a proper consideration for the second stage. *Johnson*, 2021 IL 125738, ¶ 41. For all these reasons, we cannot find that defendant's petition made a substantial showing of ineffectiveness on this basis. See *Domagala*, 2013 IL 113688, ¶ 36.

¶ 52     Lastly concerning ineffectiveness, defendant argues on appeal that counsel was ineffective for failing to object to one question during trial. On redirect examination, the State asked the victim whether she "had sex before Labor Day of 2006," and she replied: "No, ma'am."

¶ 53     "In prosecutions for *** aggravated criminal sexual assault *** the prior sexual activity *** of the alleged victim *** is inadmissible except *** as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct ***." 725 ILCS 5/115-7(a) (West 2010).

¶ 54     Defendant argues that the State's question about the victim's prior sexual activity was improper under section 115-7 of the Code of Criminal Procedure of 1963 because, first, the

statute permits only "the accused" to introduce this evidence. 725 ILCS 5/115-7(a) (West 2010). Second, while the statute permits evidence of prior sexual activity "with the accused," defendant claims that the State's question was not so limited. 725 ILCS 5/115-7(a) (West 2010). Third, defendant argues that the State's question was not proper rebuttal because the defense did not try to elicit testimony about whether the victim had sex with other people before Labor Day but only whether she had had sex with defendant before Labor Day.

¶ 55    Defendant concedes that it would have been proper for the State to elicit on redirect examination that the victim had not had sex with defendant before Labor Day. However, defendant argues that the State's question, as framed, was impermissibly broad.

¶ 56    On cross-examination, defense counsel asked the victim if the hospital nurse had asked her if she had been "sexually active." The victim replied "[y]es," indicating that she had been asked this question, but without supplying the answer. With this question, the defense dangled the issue of the victim's prior sexual activity before the jury, but without allowing her to supply the answer. Instead, counsel posed a question that asserted that the victim's answer to the nurse had been that she "and [defendant] had sex," thereby asserting both the victim's lack of virginity and that it was due to prior sex with defendant. The prosecutor's question on redirect examination closed the loop that defense counsel had opened, by permitting the victim to provide the answer to the question that defense counsel had dangled, without an answer, on cross-examination.

¶ 57    In addition, given the cross-examination about whether the victim did or did not have sex with defendant prior to Labor Day, it would have been reasonable for the jury to infer from the State's one brief question that this was the fact at issue. Defense counsel's questioning asserted that it was defendant with whom the victim claimed to have had sex prior to Labor Day.

¶ 58    "Decisions regarding 'what to object to and when to object' are matters of trial strategy and thus are entitled to great deference" on appeal. *People v. Bell*, 2021 IL App (1st) 190366, ¶ 73 (quoting *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997)). Given the victim's young age and her testimony about pain and bleeding after intercourse with defendant, and defense counsel's cross-examination regarding both her sexual activity in general and her sexual activity with defendant prior to Labor Day, we cannot find that defense counsel's decision not to object to this one brief question rendered his entire trial performance "objectively unreasonable under prevailing professional norms." *Domagala*, 2013 IL 113688, ¶ 36.

¶ 59    For the foregoing reasons, we do not find defendant's claims of ineffectiveness persuasive.

¶ 60                                          CONCLUSION

¶ 61    For all the reasons discussed above, we affirm the trial court's dismissal of both of defendant's postconviction petitions.

¶ 62    Affirmed.