2023 IL App (1st) 210988-U

1-21-0988

June 30, 2023

SECOND DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 15458 |
| | ) | |
| TONY MARSHALL, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the circuit court's dismissal of defendant's supplemental postconviction petition when defendant failed to make a substantial showing that he was denied the effective assistance of trial and appellate counsel.

¶ 2    Defendant Tony Marshall appeals from the circuit court's dismissal, on the State's motion, of his supplemental petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, he contends the supplemental petition made a substantial showing that he was denied effective assistance by (1) trial counsel's failure to

investigate and present a witness at trial, and (2) appellate counsel's failure to challenge the sufficiency of the evidence on direct appeal. We affirm.

¶ 3    Defendant was charged with armed habitual criminal (AHC), unlawful use or possession of a weapon by a felon (UUWF), and aggravated unlawful use of a weapon (AUUW) following a July 29, 2014, incident. The matter proceeded to a bench trial, where defendant was represented by private counsel.

¶ 4    Chicago police officer Zinchuk testified that on July 29, 2014, he was part of a team executing a search warrant at a basement apartment in the 4300 block of South Michigan Avenue.[1] The officers descended stairs to a doorway, where the officers knocked and announced their office. From behind the door, someone asked "who *** is it" and "what do you want." Officers again announced their office, and after a "short period" a sergeant authorized forced entry.

¶ 5    Zinchuk breached the door, which led to an outdoor breezeway that ran along the side of the building.[2] In the breezeway, Zinchuk observed defendant, whom he identified in court, Defendant fled, tossing what appeared to be a firearm into a bucket. No other civilians were present. Zinchuk immediately detained defendant and asked another officer to hold him. Then Zinchuk went to the bucket, where he "discovered" a revolver. Zinchuk called an evidence officer who recovered the firearm. A juvenile then exited the basement apartment. Zinchuk first stated that he did not remember the juvenile's identity, but when the State asked whether the juvenile was Lezereke Jarmon, Zinchuk answered, "Yes, I believe that was it." Zinchuk did not know

---

[1] The transcript does not contain Zinchuk's first name.

[2] Zinchuk described the area as a "little side gangway, like a breezeway that goes from the front of the building to the back of the building" and "like an underpass almost." For clarity, this court will refer to the area in question as a breezeway.

whether the juvenile was arrested, as he was "dealing" with defendant. During the course of his testimony, Zinchuk identified a photograph of the door to the breezeway and a photograph of the breezeway, which depicted the bucket.

¶ 6    During cross-examination, Zinchuk testified that when he entered the breezeway, defendant was five to six feet away, running toward the back of the building and the apartment door, but did not enter the apartment. The firearm was not photographed inside the bucket and was not tested for fingerprints or DNA evidence. From the breezeway door to the bucket was five to six feet, and the distance from the bucket to the apartment door was "maybe" eight feet. Zinchuk believed that the juvenile who exited the apartment was Jarmon, but was not sure. The juvenile exited the basement apartment rather than the exterior door through which the officers entered.

¶ 7    Chicago police officer Troutman testified that Zinchuk directed him to a bucket from which he recovered a .357-caliber magnum revolver containing six live rounds.[3] He did not see Jarmon or other civilians in the breezeway when he recovered the firearm.

¶ 8    During cross-examination, Troutman acknowledged that he did not see defendant in possession of the firearm. Jarmon, who was an adult, was arrested, but a different individual, an unidentified juvenile, was not. When the juvenile exited the apartment, defendant was already in custody. The bucket was "just a couple feet, maybe not even that much" from the breezeway door.

¶ 9    The State entered into evidence (1) certified copies of defendant's convictions for armed robbery in case number 09 CR 07765 and arson in case number 02 CR 163, and (2) a certification from the Illinois State Police that defendant did not possess a Firearm Owners Identification (FOID) card or "concealed/carry" permit on the date of the incident.

---

[3] The report of proceedings does not contain Troutman's first name.

¶ 10   The defense presented Jarmon, who testified that he was 54 years old, a veteran, and currently on probation for possession of "some drugs." On the afternoon of July 29, 2014, Jarmon and defendant were in Jarmon's living room. Jarmon's mother and a young man from the neighborhood were also present. The young man brought Jarmon a firearm that he found and asked Jarmon to give it to the police. Officers then "busted" into the apartment and searched everyone. Defendant never left the apartment, and Jarmon did not see defendant "handling" a firearm. Although Jarmon and defendant were arrested "right there in the hallway," the young man was not. Jarmon did not know that the young man put the firearm in the bucket.

¶ 11   During cross-examination, Jarmon testified that he was exiting the bathroom as the officers entered the apartment. While in the bathroom, he did not see whether the young man left the apartment or defendant's location. Although Jarmon did not see the young man place the firearm in the bucket, he believed that was what happened.

¶ 12   The trial court found defendant guilty of AHC, UUWF, and AUUW, concluding that defendant ran down the breezeway and threw a firearm into a bucket. The court stated that it disbelieved Jarmon's story that a juvenile entered the apartment with a firearm "minutes" before the execution of a search warrant and then placed the firearm in the bucket.

¶ 13   Posttrial, defendant fired trial counsel and an assistant public defender was appointed to represent defendant. Posttrial counsel sought a new trial alleging, *inter alia*, that trial counsel never visited defendant prior to trial to discuss the case and failed to impeach the State's witnesses with physical and testimonial evidence, and that defendant was not proven guilty beyond a reasonable doubt. After argument, the trial court denied the motion. At sentencing, the trial court merged the UUWF and AUUW counts into the AHC count, and sentenced defendant to nine years in prison.

¶ 14    On direct appeal, we affirmed defendant's conviction over his contentions that the AHC statute was unconstitutional and his sentence was excessive. See *People v. Marshall*, 2018 IL App (1st) 152895-U.

¶ 15    In 2017, while defendant's direct appeal was pending, he filed an unsuccessful *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)). See *People v. Marshall*, No. 1-17-1424 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 16    On March 30, 2018, defendant filed a *pro se* postconviction petition alleging that he was actually innocent because the unidentified juvenile mentioned at trial, Jordan Fonder, brought the firearm to Jarmon's home and hid it.[4] The petition further alleged, in pertinent part, that defendant was denied effective assistance by trial counsel's failure to (1) investigate and interview Fonder and Jarmon, (2) subject the State's case to meaningful adversarial testing, (3) impeach the State's witnesses, and (4) argue that defendant was actually innocent. Specifically, the petition alleged that prior to trial, counsel received an affidavit from Jarmon stating that a "juvenile" brought a firearm to Jarmon's home, but counsel failed to investigate this issue or "contact this person or his family." The petition also alleged that defendant was denied effective assistance by appellate counsel's failure to raise these issues on direct appeal. Attached to the petition were, relevant here, the affidavits of Fonder, Jarmon, and defendant.[5]

---

[4] The record on appeal contains a scanned copy of defendant's handwritten petition, which omits portions of the top and last lines of several pages. This does not impede our understanding of the petition.

[5] The record on appeal contains a scanned copy of Fonder's handwritten affidavit, which is scanned in such a way that the bottom line of the first page is illegible. This does not impede our understanding of the affidavit.

¶ 17 In his affidavit, notarized on July 24, 2017, Fonder averred that on July 29, 2014, he took a firearm he discovered to Jarmon, and they decided to give it to the police. During the discussion, another man, whom Fonder later learned was defendant, arrived. Jarmon did not want anyone to know about the firearm and told Fonder to hide it. Fonder hid the firearm under a bucket in the hallway. When Fonder returned, Jarmon was in the bathroom and defendant was on the phone. Then, police entered and Fonder and defendant were searched. An officer kicked over the bucket and asked who owned the firearm. When both defendant and Fonder denied owning it, the sergeant said that one of them was going to jail, and asked their ages and whether either was on parole. When defendant stated that he was on parole, the sergeant said that the firearm belonged to defendant and Fonder was told to "take a walk."

¶ 18 Jarmon's 2015 affidavit stated that a friend's nephew brought a firearm to Jarmon's home and asked Jarmon to give it to the police. Police arrived 10 to 15 minutes later, and arrested everyone except the friend's nephew.

¶ 19 Defendant averred that when he entered Jarmon's home on July 29, 2014, Jarmon and Fonder were present. The police then kicked in the door and took everyone into the hallway. During a search, a bucket was kicked over, and a firearm was discovered. Although everyone denied owning the firearm, the officers asked who was previously arrested or on parole. After learning that defendant was on parole, the officers "gave" the firearm to him.

¶ 20 The circuit court docketed the petition and appointed postconviction counsel.

¶ 21 At a hearing on December 17, 2019, postconviction counsel stated that defendant provided the name of a witness whom she was attempting to "track down." On February 21, 2020, postconviction counsel told the court that she spoke to one witness and was trying to contact a

second. On July 16, 2020, postconviction counsel told the court she obtained a witness affidavit, and needed to incorporate the witness's statement into a supplemental petition.

¶ 22    On September 10, 2020, postconviction counsel filed a supplemental petition, incorporating the claims raised in the *pro se* petition, and alleging that defendant was denied effective assistance when trial counsel failed to investigate, interview, and present Fonder at trial to corroborate defendant's claim of actual innocence. Attached was Fonder's September 8, 2020, affidavit in which he averred that on July 29, 2014, he was 16 years old, and took a firearm he found to Jarmon's home because Jarmon was previously in the military and "would know what to do with it." When Jarmon told him to remove the firearm from the apartment, Fonder put it in a bucket several feet from the apartment door. Defendant then arrived, followed by police officers several minutes later. Fonder did not tell the police that he put the firearm in the bucket because he did not want to get into trouble. He was not contacted about testifying, and although he did not want to be involved, he would have testified had he been subpoenaed.

¶ 23    The State filed a motion to dismiss alleging, in pertinent part, that defendant did not allege that trial counsel was aware of Fonder's name, location, or affidavit prior to trial, and that Jarmon did not identify the juvenile as Fonder at trial. The State concluded that defendant's ineffective assistance claim failed because he did not establish that trial counsel was aware of Fonder's identifying information or the content of his proposed testimony. Moreover, under the circumstances, Fonder may have had a constitutional right against self-incrimination.

¶ 24    On July 7, 2021, the court heard argument on the State's motion. Postconviction counsel argued that trial counsel failed to call Fonder, who actually possessed the firearm. Counsel stated

that trial counsel was told about Fonder, who "really wasn't interested in testifying at the time because he was *** concerned about his culpability."

¶ 25 The court responded that Fonder was "not cooperative" because he had a fifth amendment claim. The court further noted that while defendant's postconviction claim was that Fonder would have testified that the firearm belonged to him rather than to defendant, the court heard evidence at trial that defendant possessed the firearm and disposed of it as he fled. The court concluded that the "problem" with Fonder testifying was that he would have to be admonished, and that trial counsel "knew that and [did not get] any cooperation" because Fonder "knew he might have criminal liability." The court therefore declined to find trial counsel ineffective, as trial counsel had "no control" over Fonder.

¶ 26 Postconviction counsel then asked that the matter proceed to an evidentiary hearing on the other claims contained in the *pro se* petition. However, based on the "totality of the record," the circuit court granted the State's motion to dismiss.

¶ 27 On appeal, defendant contends that the circuit court erred in granting the State's motion to dismiss when the supplemental petition made a substantial showing that he was denied the effective assistance of trial and appellate counsel.[6]

¶ 28 The Act "provides a tool for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. House*, 2021 IL 125124, ¶ 15. There are three stages of postconviction proceedings. At the first stage, the circuit court reviews the petition independently

---

[6] On appeal, defendant does not raise any of the remaining claims from his *pro se* petition. See Ill. S. Ct. R 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

to "determine whether it is 'frivolous or \*\*\* patently without merit.' " *Id.* ¶ 16 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2008)). If the court does not summarily dismiss the petition, the matter proceeds to the second stage, where the court may appoint counsel for the defendant and the State may file a responsive pleading. *Id.* ¶¶ 16-17. If the defendant does not make a substantial showing of a constitutional violation at the second stage, the court dismisses the petition. *Id.* ¶ 17.

¶ 29    When considering a motion to dismiss at the second stage, the court must determine whether the defendant has made a substantial showing, based on the allegations in the petition supported by "affidavits, records, or other evidence," that his constitutional rights were violated. 725 ILCS 5/122-2 (West 2018); *People v. Dupree*, 2018 IL 122307, ¶ 28. A " 'substantial showing' " is the "measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle [the defendant] to relief." (emphasis in original). *People v. Domagala*, 2013 IL 113688, ¶ 35. At this stage, a reviewing court must take as true all well-pleaded facts in the petition, unless such allegations are "affirmatively refuted by the record." *Id.* We review *de novo* an order dismissing a petition at the second stage. *People v. Sanders*, 2016 IL 118123, ¶ 31. Further, we may affirm the second-stage dismissal of a petition on any basis supported by the record. *People v. Brown*, 2015 IL App (1st) 122940, ¶ 54.

¶ 30    A defendant's claim of ineffective assistance of counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance, a defendant must demonstrate "that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) *People v. Tate*, 2012 IL 112214, ¶ 19.

¶ 31 During second stage postconviction proceedings, the defendant must make "(1) a substantial showing that counsel's performance was objectively unreasonable under prevailing professional norms and (2) a substantial showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. White*, 2021 IL App (1st) 170903, ¶ 35. The failure to establish deficient performance or prejudice will defeat an ineffective assistance claim. *People v. Johnson*, 2021 IL 126291, ¶ 53.

¶ 32 Defendant first contends that the petition made a substantial showing that he was denied effective assistance when trial counsel failed to investigate and present Fonder at trial. Defendant notes that Fonder averred that he would have testified had he been subpoenaed, and that Fonder's testimony would have corroborated Jarmon's testimony that defendant did not possess a firearm.

¶ 33 Generally, matters of trial strategy are immune from ineffective assistance claims. *People v. West*, 187 Ill. 2d 418, 432-33 (1999). Even a mistake in trial strategy will not, alone, render representation constitutionally defective unless counsel's strategy was so unsound that counsel entirely failed to conduct meaningful adversarial testing of the State's case. *People v. Peterson*, 2017 IL 120331, ¶ 80. Therefore, a reviewing court is highly deferential to trial strategy decisions and evaluates counsel's performance from counsel's perspective at the time and not in hindsight. *People v. Perry*, 224 Ill 2d 312, 344 (2007). A defendant has the burden to overcome the "strong presumption" that counsel's action or inaction reflected sound strategy. *Id.* at 341-42.

¶ 34 Whether to call a witness is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant, and such decisions will not ordinarily support an ineffective assistance claim. *Peterson*, 2017 IL 120331, ¶ 80. However, trial counsel has a duty to conduct reasonable investigations. *Domagala*, 2013 IL 113688, ¶ 38. Failing to interview a witness

indicates deficient representation when the witness is known to counsel and the anticipated testimony may be exonerating. *People v. Coleman*, 183 Ill. 2d 366, 398 (1998); see also *People v. Ashford*, 121 Ill. 2d 55, 74-75 (1988) (the failure to call a witness will not support an ineffectiveness claim unless it is unreasonable for counsel to believe that the anticipated testimony would be harmful or have no probative value for guilt or innocence).

¶ 35     Here, accepting as true the facts set forth in the petition, supplemental petition, and accompanying affidavits, defendant has not made a substantial showing that trial counsel was deficient for failing to investigate and present Fonder because the materials do not contain well-pled facts establishing that trial counsel knew Fonder's identity prior to trial.

¶ 36     In the *pro se* petition, defendant states that prior to trial, counsel received an affidavit from Jarmon stating that a juvenile brought a firearm to Jarmon's home, but counsel failed to investigate this issue or "contact this person or his family." However, neither the petition nor the accompanying affidavits include facts establishing that defendant gave trial counsel Fonder's contact information or that trial counsel could otherwise identify the juvenile present at Jarmon's apartment prior to trial. Jarmon's 2015 affidavit did not identify Fonder by name; rather, Jarmon refers to a "friend's nephew." Moreover, the defense theory at trial, as detailed in Jarmon's testimony, was that a young man from the neighborhood brought the firearm to Jarmon's home and placed it in the bucket.

¶ 37     These facts, taken as true at this stage of proceedings under the Act, establish that trial counsel knew prior to trial that, according to Jarmon, an unidentified juvenile brought a firearm to Jarmon's home. However, no facts establish that trial counsel knew the juvenile's identity or contact information. Absent facts establishing that the juvenile was identified to trial counsel prior

to trial, defendant cannot establish that trial counsel's failure to investigate and present that juvenile at trial was deficient. See *People v. Makiel*, 358 Ill. App. 3d 102, 106 (2005) ("Failure to subpoena witnesses *known* to defense counsel who contradict the State's case or provide exonerating testimony demonstrates ineffective assistance of counsel." (emphasis added)).

¶ 38    We are unpersuaded by defendant's reliance on *People v. Simmons*, 2020 IL App (1st) 170650. In that case, the defendant raised a postconviction claim alleging, relevant here, that trial counsel was ineffective for failing to investigate and call the defendant's brother as a witness at trial. *Id.* ¶ 24. According to the defendant, his brother witnessed the offense, gave a statement to the police, and would have testified that someone else was the offender. *Id.* The defendant's postconviction filings were supported by his brother's affidavits that described the offender and stated that he was willing to testify, but was never contacted. *Id.* ¶ 25. The defendant's supplemental postconviction petition alleged that his brother should have been known to trial counsel because the brother was identified by name in police reports as a " 'potential eyewitness' " and was interviewed by a codefendant's attorney. *Id.* ¶ 26.

¶ 39    On appeal from the grant of the State's motion to dismiss at the second stage, we found that the defendant made a substantial showing that his trial counsel was deficient for failing to contact the defendant's brother as a potential exculpatory witness. *Id.* ¶ 43. We noted that the defendant's brother stated in his affidavit that the person he saw fleeing while shooting was not the defendant, that he told this information to the police and to a codefendant's counsel, and that he would have testified at the defendant's trial but was never contacted. *Id.* The record also contained police reports identifying the defendant's brother as a potential eyewitness. *Id.* We found no strategic reason that trial counsel may have decided not to interview the defendant's brother.

*Id.* We therefore determined, taking the facts in the affidavits as true, that the defendant made a substantial showing that trial counsel was deficient. *Id.*

¶ 40    Unlike *Simmons*, in the case at bar, no facts establish that trial counsel knew Fonder's identity prior to trial. Moreover, unlike *Simmons*, where the witness spoke to police and was identified in police reports as a potential eyewitness, here, Fonder averred that he did not speak to police officers and at trial police officers described Fonder as an "unidentified" juvenile. While trial counsel's "failure to interview known witnesses can indicate incompetence" (*id.* ¶ 42), here, the relevant witness was unidentified.

¶ 41    Accordingly, defendant cannot overcome the strong presumption that trial counsel's decision to present evidence that the firearm was brought to Jarmon's apartment by an unidentified juvenile, rather than Fonder specifically, was sound strategy. *Perry*, 224 Ill 2d at 341-42. Accordingly, defendant's claim of ineffective assistance of trial counsel fails. *Johnson*, 2021 IL 126291, ¶ 53. As defendant failed to make a substantial showing that his constitutional right to effective assistance was violated (*Domagala*, 2013 IL 113688, ¶ 33), the circuit court properly denied him postconviction relief on this claim.

¶ 42    Defendant next contends that the petition made a substantial showing that he was denied effective assistance on direct appeal when appellate counsel failed to challenge the sufficiency of the evidence.

¶ 43    The *Strickland* standard applies equally to claims concerning trial and appellate counsel. *White*, 2021 IL App (1st) 170903, ¶ 38. To succeed on a claim of ineffective assistance of appellate counsel, a defendant must establish the objective unreasonableness of counsel's performance and

a reasonable probability that the appeal would have been successful but for the complained-of error. *People v. English*, 2013 IL 112890, ¶ 33.

¶ 44    Appellate counsel is not obligated to raise every conceivable contention of error on appeal but may exercise professional judgment to determine which claims to raise. *Id*. Generally, counsel's decision not to raise an issue on appeal is given substantial deference. *People v. Harris*, 206 Ill. 2d 293, 326 (2002). It is not incompetent to refrain from raising issues which in counsel's judgment are without merit, unless counsel's appraisal is patently wrong. *People v. Simm*s, 192 Ill. 2d 348, 362 (2000); see also *People v. Williams*, 209 Ill. 2d 227, 243 (2004) (rather than raise "every conceivable issue on appeal," appellate counsel "exercise[s] professional judgment to select from the many potential claims of error that might be asserted"). Thus, unless the underlying issue is meritorious, a defendant is not prejudiced by appellate counsel's failure to raise it on appeal. *Harris*, 206 Ill. 2d at 326.

¶ 45    Here, defendant contends that he was denied effective assistance by appellate counsel's failure to challenge the sufficiency of the evidence on direct appeal when the State's case, consisting "entirely" of Zinchuk's "dubious" testimony, was refuted by Jarmon's testimony that a juvenile placed the firearm in the bucket. Defendant argues that it makes "little sense" that he would dispose of contraband in the presence of police officers, and it was "suspicious" that photographs of the crime scene did not depict the firearm.

¶ 46    When reviewing the sufficiency of the evidence, a reviewing court must determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. It is the responsibility of the trier of fact to weigh the evidence and determine witness

credibility. *Id.* ¶ 39. A reviewing court does not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence and the credibility of witnesses, or retry the defendant. *People v. Jackson*, 2020 IL 124112, ¶ 64. The positive and credible testimony of a single witness is sufficient to sustain a conviction even if the defendant contradicts it. *People v. Harris*, 2018 IL 121932, ¶ 27. The trier of fact is not required to disregard inferences that flow normally from the evidence, nor to seek all possible explanations consistent with innocence and elevate them to reasonable doubt. *Cline*, 2022 IL 126383, ¶ 41. A conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Id.* ¶ 25.

¶ 47    Defendant was convicted of AHC in that he possessed a firearm after having been convicted of two qualifying offenses (720 ILCS 5/24-1.7(a) (West 2014)). On appeal, defendant challenges only the sufficiency of the evidence proving his possession of a firearm.

¶ 48    To prove the possession element, the State can show either actual or constructive possession of a firearm. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27. Actual possession is shown by testimony that a defendant had some form of control over the firearm, "such as he had it on his person, tried to conceal it, or was seen to discard it." *Id.*

¶ 49    Viewed in the light most favorable to the State, there was sufficient evidence from which the trial court could have found defendant possessed a firearm. Here, Zinchuk testified that upon breaching the door, he saw defendant, who was running away, toss what appeared to be a firearm into a bucket. Zinchuk did not see any other civilians in the breezeway and did not see defendant enter the basement apartment. After defendant was taken into custody, Zinchuk went to the bucket, wherein he observed a revolver. This testimony supports a finding that defendant actually

possessed a firearm. See *id*. ¶ 28 (finding the credible testimony of a police officer that showed defendant had actual possession of a firearm was sufficient to prove possession).

¶ 50    Although defendant argues that it was "suspicious" that officers did not photograph the firearm and the State did not present physical evidence linking defendant to the firearm, such evidence was unnecessary for the State to prove possession. See *People v. Moore*, 2016 IL App (1st) 133814, ¶ 56 (because a single credible witness is sufficient to sustain a conviction, the State need not present corroborating physical evidence under those circumstances); *People v. Bennett*, 154 Ill. App. 3d 469, 475 (1987) (lack of fingerprint evidence does not necessarily raise a reasonable doubt of guilt; rather, it is "unnecessary and cumulative" when there is eyewitness testimony).

¶ 51    Defendant further contends that Zinchuk's testimony that defendant threw a firearm away—essentially in the direction of a police officer—as he fled made "no sense." He likens Zinchuk's account to so-called "dropsy" testimony, where an officer is alleged to have fabricated evidence that a defendant dropped contraband in plain view in order to avoid the exclusion of improperly obtained evidence. See, *e.g.*, *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 20. He further notes that Zinchuk's version of events was refuted by Jarmon's testimony that a young man from the neighborhood brought the firearm to Jarmon's home, and that defendant, who never left the apartment, did not have a firearm.

¶ 52    As discussed, the positive and credible testimony of a single witness is sufficient to sustain a conviction even if the defendant contradicts it. *Harris*, 2018 IL 121932, ¶ 27. Contradictory evidence, or minor or collateral discrepancies in testimony, does not automatically render the totality of a witness's testimony incredible. *People v. Gray*, 2017 IL 120958, ¶ 47; *People v.*

*Peoples*, 2015 IL App (1st) 121717, ¶ 67. That is true whether the factfinder is considering contradictions or discrepancies within the testimony of a single witness (*Gray*, 2017 IL 120958, ¶ 47), or, as here, comparing one person's account to that of another (*Peoples*, 2015 IL App (1st) 121717, ¶ 67).

¶ 53    Here, Zinchuk observed defendant toss an object that appeared to be a firearm into a bucket while running in the breezeway and then observed a revolver in that bucket. Although Jarmon testified that defendant did not have a firearm and never left the apartment, the trial court found Zinchuk's testimony credible. The court was not "required to accept the defendant's version of the facts." See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53.

¶ 54    A rational trier of fact could have found Zinchuk's testimony was neither improbable nor contrary to human experience. Defendant's allegation that police officers frequently fabricate "dropsy" testimony does not show that the evidence in this case, *i.e.*, that defendant threw a firearm away as he fled police, was so improbable or incredible that it created a reasonable doubt of his guilt. See *Campbell*, 2019 IL App (1st) 161640, ¶ 34 (noting that "we do not always see logical responses to police presence from criminal suspects"); see also *People v. Henderson*, 33 Ill. 2d 225, 229 (1965) ("Far from being contrary to human experience, cases which have come to this court show it to be a common behavior pattern for individuals [possessing contraband] to attempt to dispose of [it] when suddenly confronted by authorities.").

¶ 55    Considering the two versions of events presented, the trial court did not find defendant's version credible. See *People v. Bradford*, 2016 IL 118674, ¶ 12 ("It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts."). Here, the trial court found the testimony that defendant possessed a firearm to be

credible and rejected the testimony to the contrary. This court will not retry a defendant and overturn the trial court's credibility determinations simply because a defendant claims his version of events is more credible. See *Peoples*, 2015 IL App (1st) 121717, ¶ 67 (the mere existence of conflicting evidence at trial does not require a reviewing court to reverse a conviction).

¶ 56   Accordingly, viewing the evidence in the light most favorable to the State, as we would have been required to do on direct appeal, we cannot say that no rational trier of fact could have concluded that defendant possessed a firearm. See *Cline*, 2022 IL 126383, ¶ 25. Because the underlying issue was not meritorious, defendant cannot establish that he was prejudiced by appellate counsel's failure to raise it on direct appeal (*Harris*, 206 Ill. 2d at 326), and his claim of ineffective assistance of appellate counsel must fail (*English*, 2013 IL 112890, ¶ 33). Therefore, the circuit court properly denied defendant postconviction relief on this claim. *Domagala*, 2013 IL 113688, ¶ 35.

¶ 57   For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 58   Affirmed.